[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 311 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 312 
Three principal questions arise in this case: First. Whether it was necessary for the plaintiff to prove that it was a corporation; Second. Assuming that the bill was endorsed by the defendant for the accommodation of the Buffalo and New-York city railroad company, which was a transaction without the scope of the defendant's business as a banking association, whether that circumstance relieves the defendant from responsibility to the plaintiff, assuming that it is a holder of the paper in good faith and for a valuable consideration; Third. Whether the endorsement of the bill was made by the defendant's authority, and is in such form as to bind the defendant as endorser.
(1.) The defendant has not pleaded in such a manner as to oblige the plaintiff to prove its corporate existence. The answer is a general denial of all the allegations in the complaint, and, but for the statute to be presently mentioned, would put in issue the plaintiff's corporate character. A section of the Revised Statutes declares that in suits brought by a corporation it shall not be necessary to prove on the trial the existence of such corporation, unless the defendant shall have pleaded in abatement or in bar that the plaintiff *Page 314 
is not a corporation. (2 R.S., 458, § 3.) This provision was enacted to relieve the plaintiff from the expense and inconvenience of preparing in every case of an action by a corporation where the general issue was pleaded, to prove its charter. If the defendant really desired to litigate that question he was required to plead the fact expressly. The defendant's counsel in this case insists that the new rules of pleading have by necessary implication abolished that provision. I am not of that opinion. Taking the provisions of §§ 140 and 421 together, it will be seen that the prior practice and forms of pleading are abolished only in a qualified manner; for the last mentioned section declares that existing statutory provisions relating to actions, not inconsistent with the Code, and which are in substance applicable to the new actions authorized by that system, are not affected by it. There is no inconsistency or repugnancy in applying the provision referred to from the Revised Statutes to actions under the Code. There are the same reasons of convenience for it now which existed under the former system, and it does not conflict with any particular provision of the Code. It therefore remains in force.
(2.) It is quite clear that the officers of a banking association or other corporation have no power to engage the institution as the surety for another, in a business in which it has no interest. Such a transaction is without the scope of the business of the company. The authority of the governing officers of a corporation, to affect it by their contracts in its name, is of the same general character as that which a partner has to bind the firm. In either case, if they contract in a matter to which the business of the corporation or partnership does not extend, their engagements are invalid as against the corporation, for want of authority to conclude those in whose behalf they assume to act. I do not speak now of a case where the particular transaction is forbidden by some positive law, or is hostile to some *Page 315 
principle of public policy, but simply as to cases where the question relates to the authority of the agent. To approach more nearly the question under consideration: I entertain no doubt but that a bank may lawfully endorse the commercial paper which it holds, with a view to raise money upon it by way of discount, or for any other lawful purpose. In this respect it has the same right as any other holder of such paper. (Marvine v. Hymers,
2 Kern., 223.) The power of a bank to avail itself of its assets in this way is as perfect as that of any merchant. The authority to do so is very important, if not quite essential, to the existence of these institutions; and it has been incidentally recognized by the legislature. (Laws 1841, ch. 292, § 2.) The contract of endorsement is incident to the negotiation of mercantile paper, and the right to transfer such paper includes the power to enter into the collateral contract which an endorser assumes. But the officers of a bank have no right to endorse in its behalf the paper of other persons in which it has no interest, or to make the bank a party to paper for the accommodation of any one. Such contracts are void, upon the same principle that an endorsement by a partner, of the firm name, without the consent of his co-partners, for the accommodation of a third person, would be inoperative against the firm. But if a co-partner of a mercantile firm affixes the partnership name to paper in which the firm has no interest, and such paper is negotiated to an innocent holder for a valuable consideration, the firm is bound. (Gansevoort v. Williams, 14 Wend., 133;Catskill Bank v. Stall, 15 id., 364; Evans v. Wells, 22id., 324, per Walworth, Ch'r.) The same principle applies to the acts of the officers of a corporation. The defendant, as a banking association, had the general right to negotiate notes and bills held by it, by procuring the same to be discounted; but it had no right to endorse and to procure to be discounted notes or bills belonging to any other corporation or individual, where it had no interest in the subject. *Page 316 
The evidence in this case tended to show, and perhaps it established, that the bill in question was drawn, accepted and endorsed for the accommodation of the railroad corporation, and to enable that corporation to borrow money. The endorsement of the defendant was therefore void, in the hands of every person having notice of the facts. But if the proper officers of the defendant have negotiated it to the plaintiff, representing it to be a bill belonging to their bank, and upon the faith of that representation the plaintiff has, in the usual course of its business discounted it, advancing to the defendant the proceeds, the defendant is precluded, upon the principle just referred to, from setting up that it was endorsed without authority. This doctrine has been carried much further than it is necessary to go in this case. It has been held, that if a note made for the purpose of raising money is negotiated to an endorsee upon a discount greater than the legal rate of interest, by means of a representation by the endorser, that it is business paper in his hands, that the endorser cannot set up the defence of usury against the endorsee. (Holmes v. Williams, 10 Paige, 326;Dowe v. Schutt, 2 Denio, 621; Truscott v. Davis, 4Barb., 495.) This is carrying the principle of estoppel to the length of protecting a transaction prohibited by a positive law founded upon considerations of public policy. It is not necessary to affirm that doctrine in this case, for the objection here is not that the transaction itself was unlawful, but only that it was unauthorized in this particular case. I see no objection to applying to it the principle that where a party has, by his declaration or conduct, induced another to act in a particular manner, he will not afterwards be permitted to deny the truth of his admission, if the consequence would be to work an injury to such other person. (Dezell v. Odell, 3 Hill, 215, perCowen and Bronson, justices.) That the defendant, by its properly authorized officers, represented to the plaintiff that this bill was one which it held and owned, was clearly inferable from the evidence *Page 317 
It was, on its face, made payable to the order of its cashier, an officer who is usually the financial manager of a bank, and in the form usually adopted to vest the title of the paper in the bank. (Bank of Watervliet v. White, 1 Denio, 608.) It was transmitted to the plaintiff in an official letter written by that officer, with a request that the plaintiff would discount it. It is not said in terms in the letter that the discount was applied for for the benefit of the defendant, but this is as strongly implied as though it had been stated, as no other party is alluded to, and there was nothing in the tenor of the bill or in the terms of the letter to suggest the idea, that the former was accommodation paper, or that any other party than the defendant had an interest in the transaction which the letter invited. But it does not rest upon the authority of the cashier. Mr. A.D. Patchin, the president, was the sole manager of the bank. It had no directors, but the president, who was at the same time the owner of nine-tenths of the stock, stood in the place of a board of directors, and had all the power which such a board possesses in banks organized in the usual manner; and the evidence tends strongly to show that the bill was sent to the plaintiff for discount, by his express direction. There is no ground for saying that the plaintiff discounted the paper for the accommodation of the railroad company. Upon the face of the transaction, it presents the case of one bank sending one of its discounted bills to another bank to be re-discounted for its use, and there is no evidence that the plaintiff's officers knew or suspected that this was not actually the case. It was, therefore, a correct instruction to be given to the jury, that the plaintiff was entitled to recover, though they should find that the bill was drawn and was endorsed by the defendant for the benefit of the railroad company, and in order to raise money for its accommodation, provided it appeared that the plaintiff discounted it in good faith, in consequence of a representation by the defendant that it was its bill. *Page 318 
(3.) I have thus far supposed that the endorsement was in a proper form to bind the defendant; but this is the most important and not the least difficult point in the case The name of the defendant's corporation is not attached to the endorsement and does not appear on any part of the bill. Assuming, as I have supposed we are warranted in doing, that the bill was sent to the plaintiff by the defendant's officers with the endorsement appearing upon it, as paper belonging to the defendant as a banking association, with a request to have it discounted for the benefit of that bank, is the form such as to bind the defendant as an endorser? The defendant's counsel relies upon the rule of law that an agent must, in order to bind his principal, contract in the principal's name and not in his own. (Moss v.Livingston, 4 Comst., 208.) This is the general rule, but it is subject to many exceptions. It is difficult to reconcile upon principle the various cases which have been decided upon this point; but an examination of them will show that the doctrine, as I have stated it, has been broken in upon in a variety of instances. (See the cases cited in the text Notes of Story onAgency, §§ 154 to 162; Randall v. Van Vechten, 19Johns., 60; Brockway v. Allen, 17 Wend., 40; Evans v.Wells, 22 id., 324, 335, per Walworth, Ch'r; Staats v.Howlett, 4 Denio, 559.) In most of these cases, if not in all, though the engagement purported to be that of the person signing as agent, the name of the principal appeared on some part of the instrument, and that circumstance is particularly mentioned as essential. That feature is wanting in this ease; and I find some difficulty in saying that this endorsement, as it stands, can be held to be the contract of the defendant. But I am of opinion that the defendant should be held liable as endorser upon a different principle — that of allowing the endorsement to be filled up according to the intention of the parties. In TheNorthampton Bank v. Pepoon (11 Mass., 288), the defendant was sued as the maker of a negotiable promissory note, which had been *Page 319 
endorsed to and held by the Berkshire Bank; and the question was as to the transfer by that bank to the plaintiff. The endorsement was by one Learned, an attorney, with full authority from the board of directors; but the form in which it was done was by the attorney writing his own name upon the note adding, asattorney. The formal words of a common endorsement appear to have been in the first instance written over the name of the attorney, but the court allowed it to be altered and filled up as an endorsement by the Berkshire Bank, according to the intent. The court, Chief Justice Parker giving the opinion, upon a motion for a new trial, said: "We are all satisfied that if the authority of Learned was good to endorse as attorney, the plaintiffs may erase the words written over his name and substitute other words which will give effect to the endorsement." Folger v. Chase (18 Pick., 63), presented substantially the same question. The plaintiff, in an action against the prior parties to several notes which had been endorsed to and held by the Phœnix Bank, made title to the notes by the endorsement of the cashier of that bank made in the same form with that of the bill in question, viz: "P.H. Folger, cashier." It was held that the plaintiffs were entitled to recover, the court saying: "As to the objection that the endorsement is not made in the name of the corporation, we think the endorsement by the cashier, in his official capacity, sufficiently shows that the endorsement was made in behalf of the bank; and if that is not sufficiently certain, the plaintiffs have a right now to prefix the name of the corporation." It will not fail to be remarked that these actions were not against the bank whose officers had endorsed the paper, but against prior parties; but the question in each case was as to the effect of what had been done towards transferring the paper. This, however, does not affect their application to this case; for if the endorsement operated to transfer the paper upon the principles of the law merchant, it at the same time created *Page 320 
by force of the same law the obligation of endorser. If the holder in these cases could write the name of the corporation over the signature of the officer, the contract would then be in the usual form, and would carry with it the ordinary consequences. The principle thus settled by the supreme court of Massachusetts carries into effect the intention of the parties to such transactions, is in accordance with legal analogies, by which effect is given to endorsements on negotiable paper by allowing them to be filled up in such manner as to carry out what was designed, and is not opposed to any case in our own courts. I am disposed to follow it in this case. In Moss v. Livingston,
lately decided in this court and before referred to for another purpose, an officer of a corporation who had accepted a bill drawn on him as such, in his own name, adding the words "President of the Rosendale Manufacturing Co.," was held to be individually liable. But it was not shown that he had authority to bind the company by an acceptance, and several of the judges placed their opinions upon the absence of such evidence. In a yet more recent case, we held that a corporate officer putting his name, with the addition of his office, as endorser upon a negotiable note held by the corporation, the endorsement being in its business, did not bind him personally. No question arose as to the liability of the corporation. (Babcock v. Beman, 1Kern., 200.)
In the case before us, I am of opinion that the plaintiff was entitled to write over the signature of Mr. Stokes the words "For the Patchin Bank." An endorsement in that form would render the defendant liable as endorser. It is not necessary that a blank endorsement should be actually filled up on the trial, unless required by the defendant. In practice it is rarely done; unless a point is made upon its omission, it is no cause for reversing the judgment.
When preparing the foregoing opinion, I was under the impression that the rulings at the circuit and the instructions to the jury substantially conformed with the views of *Page 321 
the law which I have expressed. Upon an examination of the bill of exceptions, aided by my brethren, on consultation, I am convinced that one portion of the charge goes further than I had supposed, and beyond the positions above stated. The judge charged that if Stokes, the cashier, had special authority from the Patchin Bank, or from Patchin, the manager of the bank, to endorse the draft in question, the bank was bound by the endorsement, though it was for the railroad company an accommodation endorsement, and though the bill was made to raise money for the benefit of the railroad company. If the judge had added the qualification that the plaintiff had received and discounted the bill under a representation of the defendant that it was its bill which the cashier forwarded to be discounted for the defendant's benefit, I think the charge would have been quite correct. My brethren, however, do not now wish to express an opinion upon any other question than that the portion of the charge which I have just mentioned, as it stands unqualified, is erroneous.
The judgment must be reversed, and a new trial ordered on this ground.
HAND, J., delivered an opinion, in which he arrived at the conclusion that the judgment should be affirmed except for the error in the charge, mentioned in the conclusion of the above opinion by DENIO, J.
All the judges were in favor of reversing the judgment and ordering a new trial, on the ground that the charge to the jury was erroneous in the particular mentioned in the concluding part of the opinion of DENIO, J. The court did not pass upon the other questions discussed in that opinion.
Judgment reversed. *Page 322