JONATHAN S. BOOTH v. THE FARMERS' AND MECHANICS' NATIONAL BANK.

(GENERAL TERM, FOURTH DEPARTMENT, MAY, 1871.)

A satisfaction piece given to the debtor by the ostensible owner of a judgment is, it seems, equivalent to a receipt for the money, and evidence against the latter, in an action by the real owner, for money had and received.

But where the president of a bank, assuming to act as such, executed and delivered to the judgment debtor a satisfaction piece of a judgment recovered in favor of the bank, but assigned to a third person, and the assignee not standing in the position of one who had advanced money, or paid value *bona fide* on the strength of the satisfaction, sued the bank for money had and received, it seems that no presumption of authority in the president from the bank could arise in the assignee's favor, and that a receipt of the money, by its president, did not establish the liability of the bank therefor.

An entry made after filing a satisfaction piece of a judgment in the docket book, under the heading "when satisfied" referring to the judgment, which is as follows: "April 11th, 1864, S. P.," is under the long-

continued and uniform practice of canceling the docket by memo-randa thereon, amounting to practical construction of the statute (2 R. S., 362, § 22,) a sufficient cancellation of the docket.

The docket is no part of the record of the court, and does not import absolute verity.

In making entries upon the docket the clerk acts ministerially, and his erroneous or false entries cannot conclude the parties.

He is authorized (2 R. S., id.) to cancel and discharge the docket of a judgment, upon the filing with him of an acknowledgment of satisfaction, signed by the party in whose favor the judgment is obtained, and authenticated in the manner required. Without this, his act in canceling the docket is without jurisdiction, and void as to the parties whose rights purport to be affected by it.

It is incumbent on parties who propose to act on the faith of statements made in the docket, to see that the clerk had due authority to make the entries.

A satisfaction piece of a judgment for the purpose of authorizing cancellation of the docket, is an instrument of as solemn a nature as a deed; when executed by an agent, it must purport on its face to be executed in the name of the principal.

Accordingly held, that a satisfaction piece of a judgment recovered in favor of a bank, executed and delivered to the judgment debtor by its president, running in the president's name as such, and signed by him, as president, without the corporate seal, and not referring to or announcing the act as that of the bank, was not the satisfaction of the bank, and gave no authority to cancel the docket thereof.

A satisfaction piece purporting to be of a judgment by a certain plaintiff against F., and others, does not give the clerk authority to cancel the docket of a judgment against M. and G., in favor of the same plaintiff, where F. was party defendant, but unserved with process in the action in which the latter judgment was recovered; and although the facts are sufficient to produce moral conviction that the latter judgment was intended to be described in the satisfaction piece. Whether, when a State bank has become a national bank, under section 44 of the act of Congress, of June 3d, 1864, the liabilities of the pre-existing bank follow and attach upon the national bank.—*Quere.*

Motion by the plaintiff for a new trial on a bill of exceptions taken at the Monroe Circuit, and ordered to be heard at the General Term in the first instance. The facts appear in the opinion of the court.

*W. F. Cogswell*, for the plaintiff.

*Theodore Bacon* and *H. R. Selden*, for the defendant.

Present — MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court — TALCOTT, J.   This action is brought against the defendant upon an alleged liability of the Farmers' and Mechanics' Bank, of Rochester, which became a national bank, by the name of the Farmers' and Mechanics' National Bank, under the provisions of section 44, of the act of congress, providing for the organization of banking associations, approved June 3d, 1864 (13 U. S. Statutes, at Large, 99). Perhaps the most important question discussed by the counsel on the argument, was the question whether in such a case the liabilities of the pre-existing State bank, follow and attach upon the national bank, after it has complied with the act of congress, and became, in effect, a corporation chartered and regulated by the United States government.   The entire omission from the act of congress of any express provision on the subject has, it must be conceded, left a question, the solution of which is not free from difficulty, but which, if the conclusions which we have arrived at on other points are correct, it is not necessary to determine in this case.   The action is brought upon the allegation that the Farmers' and Mechanics' Bank, of Rochester, recovered a judgment against Archibald McLean, Hector McLean, and Theodore S. Goddard, for $3,503.21, damages and costs, which was filed and docketed in the office of the clerk of Monroe county, in December, 1860, which judgment the said bank sold and assigned to the plaintiff for a valuable consideration, in December, 1861 ; and that afterward the said bank, without the consent of the plaintiff, discharged the judgment of record. The complaint also contains a count for money had and received by the defendant in this suit to the use of the plain-tiff.   The plaintiff on the trial, after proving the recovery of the judgment, and the assignment thereof to him, introduced in evidence a satisfaction piece, which was entitled " The Farmers' and Mechanics' Bank, of Rochester, against Archibald H. McLean, Hector McLean, Theodore Goddard, and Charles L. Flint ; " the body of which was in these words : " I, Jacob Gould, president of said bank, acknowledge satisfaction of a judgment recovered against Charles L. Flint, and

others, in the Supreme Court, of the State of New York, between the Farmers' and Mechanics' Bank, of Rochester, plaintiff, and Archibald H. McLean, Hector McLean, Theodore Goddard, and Charles L. Flint, defendants, for $3,503.31, damages and costs. Judgment record filed and docketed the 29th day of December, one thousand eight hundred and sixty, in the county of Monroe. Dated the 11th day of April, 1864. J. Gould, president."

This instrument correctly states the time of the docket of the judgment in question. As to the amount of the recovery it varies in the sum of ten cents. The docket was produced and the judgment appeared to have been docketed against the McLeans and Goddard, under their respective names; and in each instance they are stated in the docket to have been impleaded with Charles L. Flint. It appeared that no other judgment was docketed in that office against any of these parties. In a column headed "when satisfied" in the docket book, was an entry, as follows: "April 11th, 1864, S. P." The letters "S. P." are supposed to mean "satisfaction piece," though not explained.

After this proof the plaintiff offered to show that "prior to the date of the satisfaction piece, the McLeans and Goddard were the owners in fee of certain real estate in the county of Monroe, which was subject to the lien of the said judgment; and after the discharge of said judgment " by the entry of April 11th, 1864," they sold and conveyed such real estate to a *bona fide* purchaser, who took the same without notice of any defect in the discharge of said judgment, and paid a valuable consideration therefor; and that the amount in value of such real estate was equal to the amount of said judgment." This evidence was rejected, and the plaintiff excepted to the ruling, and, thereupon, rested his case. Whereupon the court, on a motion of the defendant, directed a nonsuit, to which the plaintiff also excepted.

It is to be observed, that these special damages were not alleged in the complaint, and that it was not offered to be shown that the McLeans and Goddard were insolvent, or had

not other sufficient property, real or personal, out of which the judgment might have been satisfied.   No objection to the offer of evidence on either of these grounds appears to have been made on the trial, nor was any such presented on the argument at bar; and we, therefore, omit all consideration of those questions.

It is claimed that the satisfaction piece was *prima facie* evidence of money had and received by the Farmers' and Mechanics' Bank of Rochester, to the use of the plaintiff. Ordinarily it would, probably, be presumed that the execution, acknowledgment, and delivery of a satisfaction piece of a judgment was upon the receipt of the money; that being the only legal mode of satisfying a judgment for the payment of money, except by virtue of some special agreement, or other extraordinary circumstances; and we think, in the absence of any other explanation, such a satisfaction piece would, like a receipt for the money, signed by the plaintiff, be *prima facie* evidence against him of the receipt of the money in fact.

The serious objection to the evidence, as designed to sustain an action for money had and received by the Farmers' and Mechanics' Bank of Rochester, is, that the evidence of the plaintiff and his complaint show, that Jacob Gould, though president of the bank, had no right to receive the money. Though, in general, it would, probably, be presumed that the president of a bank has authority to receive money due to the bank, so that his receipt as such officer would be evidence of the fact of the receipt of the money, as against the bank, yet this presumption of authority must be confined to those acts which the bank itself could rightfully do.   In this case, the bank, having absolutely assigned and transferred all its right, title, and interest in, to and under the judgment, had no right to collect it, or to receive the moneys due upon it; and the act of Jacob Gould, conceding he assumed to do it as president of the bank, being one which the bank itself could not rightfully do, was necessarily outside of any authority which could be presumed to be vested in the president; and, therefore, if we should assume that the satisfaction piece, as

against the bank, proved the fact that Gould had assumed to receive the money, when the other fact appears, namely, that the bank was not then the owner of, and had no interest in, the judgment, then the receipt by Gould would not, *prima facie*, establish the liability of the bank for the money. Neither would the receipt of Gould, in such a case, be evidence, as against the bank, of the fact of the receipt of the money by Gould.

The declarations and receipts of agents are evidence against the principal only where the declaration or receipt is part of some *res gesta*, in which the agent had, or it is to be presumed he had, authority to act for the alleged principal. There are many cases, it is true, where a corporation is made liable for the acts of its agents, which not only the agents themselves were unauthorized to do (*Farmers' and Mechanics' Bank* v. *Butchers' and Drovers' Bank*, 16 N. Y., 125), but which the corporation itself had no power to do. (*Bank of Genesee* v. *The Patchin Bank*, 13 id., 309 ; S. C., 19 id., 312.) But this is in cases where the party seeking to enforce the liability is in the position of a *bona fide* holder of the obligation purporting to be the act of the corporation, and who, without any notice that the act was an excess of authority on the part of the agent, or the power on the part of the corporation, has advanced value on the faith of the act or obligation. The plaintiff here occupies no such position, nor was it offered to be shown that the purchaser of the real estate ever saw, or was, in fact, misled by, the receipt executed by Jacob Gould.

The act of Jacob Gould is, by the other proof, taken out of the region of presumptive powers, and, therefore, in and of itself, and except in favor of a party who has advanced value on the faith of the act, as an act of the corporation, his receipt affords no evidence of the receipt of the money by the bank, or its liability to the plaintiff.

The remaining question is, as to the legal effect of the execution, acknowledgment and filing of the satisfaction piece, and the entry made on the docket in the clerk's office.

Here it is again to be observed that the plaintiff did not offer to show that the purchaser of the real estate from the McLeans and Goddard, had seen the satisfaction piece, or the entry on the docket, or acted on the faith thereof, and had, in fact, been misled thereby, so that there is no question of any equities which might be set up by him, as against the bank, or as against the plaintiff, the assignee of the judgment. The question is, whether the satisfaction piece and the entry on the docket constitute an absolute discharge of the judgment in law, so that by reason thereof, the purchaser may hold the land discharged of the lien of the judgment.

The satisfaction piece is assumed to have been duly filed in the office of the clerk, of Monroe county, on the day of its date. In *Lownds* v. *Remsen* (7 Wend., 35), the court held that a satisfaction piece is not a record, and that an entry thereof on the docket did not amount to a discharge of the judgment; but to have that effect it must be entered on the judgment roll. This was in an action against a sheriff for an escape, after he had received written notice from the defendant in execution, of the filing of a satisfaction piece. It turned out that the satisfaction piece was forged; and although it seems to have been conceded that if the entry on the roll had been made, it would have operated as an absolute discharge of the judgment, and the entry could not have been impeached for the forgery of the satisfaction piece, in a collateral proceeding, yet no such entry having been made, it was held, the proof of the forgery was admissible, and the sheriff was held liable.

That case, however, was decided under the Revised Laws of 1813; and the court truly says that the statute (1 R. S., 506, § 17) only regulates the taking of acknowledgment of satisfaction pieces, and says nothing as to their character or legal effect. The Revised Statutes contain a further provision, having a very important bearing on the question under discussion. After providing that a judgment shall not be a lien on lands, until the record thereof be filed and docketed as therein directed, and for the form of the docket, and that the

book of dockets shall be open for the examination of all per-
sons desiring the same, the statute further provides, as
follows (2 R. S., 362, §§ 24, 22) : " The docket of a judgment,
rendered in any court of record, may be canceled and
discharged by the clerk thereof, upon filing with him an
acknowledgment of satisfaction signed by the party in whose
favor such judgment was obtained, or by his executors, or
administrators, duly authenticated as hereinafter directed."

There is no express provision as to how the docket is to be
canceled, or, specifically, as to what shall be the effect of
cancellation. The effect is plainly to be inferred, however,
from the provision that a judgment not docketed shall not be
a lien on land. Cancellation being obviously designed to
operate as, in legal effect, an obliteration and removal of the
judgment from the docket. The statute provides that when
an execution shall be returned satisfied, it shall be *deemed
satisfied*, unless the return be vacated by the court, and that
the clerk shall enter in the docket the fact of the return.

In *Taylor* v. *Ranney* (4 Hill, 619) which was a *scire facias*
against *terre tenants*, of the judgment debtor, an execution
had been returned satisfied, and so entered on the docket.
The return was afterward set aside by order of the court ;
but after the return, and before it was set aside, the *terre·
tenants* had purchased *bona fide*, and for value. It was held,
that the judgment could not be revived against the *terre
tenants*, though the court held the defendant's plea bad in
form, on another ground.

In *Beebe et al.* v. *The Bank of New York* (1 J. R., 529), a
satisfaction piece had been acknowledged by the assignor of a
judgment, after the assignment ; and the Court for the Cor-
rection of Errors, held the judgment discharged ; or as THOMP-
SON, J., expressed it, " the satisfaction entered on record must,
as to all persons who stand in the situation of innocent pur-
chasers for a valuable consideration, be deemed valid and
effectual."

In the latter case the satisfaction was probably entered on
the record, as, though not stated in the statement of facts, it

is expressly so stated by the counsel for the appellant, and is
assumed by the court.   The language of the statute, in refe-
rence to the thing to be done by the clerk when a satisfaction
piece is filed, and when an execution is returned satisfied, is
not the same.   In the latter case he is to make an entry of
the fact, and in the former he is to cancel and discharge the
docket.   The entry in this case may be interpreted as mean-
ing, "Satisfied on the 11th of April, 1864, by a satisfaction
piece."   It appeared, in the case of *Lownds* v. *Remsen* (*supra*),
from the records of the court in which the judgment was
recovered (New York Common Pleas), that, for a century
preceding, the mode of satisfying a judgment, on the filing
of a satisfaction piece, had been simply by an entry on the
docket of a memorandum to that effect.   The cancellation
provided for by the provision of the Revised Statutes above
quoted is not of the record, or by an entry on the roll, but a
cancellation of the docket; and we take notice that, since the
Revised Statutes, the practice of the clerks of this court has
been to make a memorandum in the docket, as well in the
case of a satisfaction piece as in the case of an execution
returned satisfied, making no more formal cancellation.
Under this long-continued and, as we think, uniform practice
of the officers of the court, without objection, amounting to
a practical construction of the act, we think such an entry must
be held a cancellation of the docket, within the meaning of
the statute.   The question then arises, is the act of the clerk
conclusive upon the parties in interest, in any collateral pro-
ceeding, or, rather, will the act of the clerk, in canceling the
docket of a judgment, although without authority, protect a
purchaser in good faith for value, while such an entry on the
docket exists unvacated?   In the case of *Lownds* v. *Remsen*,
as before stated, it seems to be conceded by the court, that,
if the satisfaction had been entered on the roll, it would have
been conclusive on the plaintiff until vacated, though entered
on a forged satisfaction piece.   This was upon the technical
ground that the record itself imports absolute verity, and is
deemed to be the act and judgment of the court, while an

entry by the clerk in the docket has no such effect. The docket is no part of the record of the court. The entries upon it are directed to be made by the clerk, and neither in fact nor theory are submitted to the court. In making such entries the clerk acts in a ministerial capacity, and we think his erroneous, or false entries cannot conclude the parties, whatever might be the effect of an entry which he was authorized by law to make. If he should make an entry that an execution had been returned satisfied, contrary to the fact, we think the plaintiff's rights would not be affected by such entry, either as to the lien of his judgment or the right to issue an execution, any more than an entry of a judgment on the docket, without any record to sustain it, would bind the supposed parties until it was vacated by some direct proceeding.

The clerk is authorized to cancel and discharge the docket upon the filing with him of an acknowledgment of satisfaction, signed by the party in whose favor the judgment was obtained, and authenticated in a particular manner. Unless this has been done, the act of the clerk in canceling the docket is without jurisdiction, and void as to the parties whose rights purport to be affected by it; though it is quite probable the clerk might, by entering on the docket the satisfaction of a judgment without due authority, subject himself to an action in behalf of a party who had been misled and damnified thereby.

This view of the case renders it incumbent on parties, who propose to act on the faith of statements made in the docket, to see that the clerk had due authority to make the entries. This is no great hardship, since his authority, if any, should be found on file in his office.

This brings us to the question, whether the instrument signed and acknowledged by Jacob Gould conferred upon the clerk of Monroe county any authority to cancel the docket of the judgment which was assigned to the plaintiff, assuming that, however false or fraudulent that instrument may have been, if, upon the face of it, it conferred the authority upon the clerk, the judgment is to be deemed satisfied and dis

charged in behalf of a *bona fide* purchaser for value. The counsel for the plaintiff did not stop with proof of the cancellation of the docket, but took upon himself the burden of showing the authority of the clerk to make the cancellation. To the satisfaction piece produced, two objections are taken :

1st. That it does not purport to be the act of the bank, or, in the language of the statute, it is not, and does not purport to be, " signed by the party in whose favor such judgment was obtained."

2d. That it does not describe the judgment, the docket of which the clerk has assumed to discharge.

The question as to the manner of the execution of written instruments, by those assuming to act as agents, in order to bind their principals, was much discussed in the case of *Genesee Bank* v. *The Patchin Bank* (13 N. Y., 309 ; 19 id., 312), referred to by the counsel for the plaintiff. That case presented the question whether the indorsement of a bill by the defendant's cashier, by writing on the back of it his name, with his official designation, purported to be the indorsement of the bank, or whether the name of office was, in legal effect, a mere *descriptio personæ*. When the case was first before the court, the opinion was delivered by DENIO, J., who, while admitting the general rule to be, as it unquestionably is, that an agent, in order to bind his principal, must contract in the name of the principal, upheld the validity of the indorsement to bind the bank, upon the ground that the cashier in fact acted for the bank, and with due authority from it ; and the holder had received it for value, as the act of the bank, and might write over the blank indorsement words expressive of the fact that the indorsement was the indorsement of the bank.

On the second occasion when the cause was before the court, the leading opinion was delivered by GRAY, J., the grounds of whose opinion may be stated by a brief quotation from it, as follows : " As a general proposition it is undoubtedly true that one who signs a writing as agent, trustee, or president, is regarded as merely describing himself ; but where a writing

is thus executed, with full authority from a principal, and is received by the payee as the obligation of the principal, the party on whose account it is executed is alone liable." And on this occasion Judge DENIO reiterated the views expressed by him when the case was first up. On both occasions the indorsement was held to be binding on the bank, upon the sole ground that it was shown to have been made in behalf of the bank, with due authority from it, and was so received by the holder, for value; and the decision went, doubtless, to some extent, upon the idea, stated in the opinion of Mr. Justice GRAY, that "the same strictness is not required in the execution of commercial paper, as between banks, that is, in other respects, between individuals."

This is not the case of an ordinary contract, much less the indorsement of commercial paper, where much of the intention of the engagement is left to be inferred from the surrounding facts and circumstances. A satisfaction piece, though, as we see, from the case of *Lownds* v. *Remsen*, not technically a record, yet, for the purpose of authorizing cancellation of the docket, must be duly and formally authenticated, and is an instrument of as solemn a nature, at least, as a deed. (See *Taft* v. *Brewster*, 9 Johns., 334; *Stone* v. *Wood*, 7 Cow., 453.)

We have been referred to no authority, and we assume none can be found, holding that an instrument of this nature can be excepted from the general rule that to bind the supposed principal, an instrument executed by an agent must purport to be in the name of the principal. Besides, here was no authority from the principal proved; and as we have before shown, none can be presumed. The instrument commences: " I, Jacob Gould, president of said bank, acknowledge satisfaction, &c.; and is signed J. Gould, President," without any seal of the corporation, or any other circumstance plainly announcing it as the act and deed of the bank. To hold it to be the act and deed of the bank, we must resort, not to the instrument itself, but to inference from probabilities, and that too where it does not appear that there was any authority, in fact, to bind the principal by such

an instrument.   The assignment of the judgment, in evidence in this case, and, in fact, executed by the same officer, will illustrate the difference between an instrument purporting to be the act and deed of the principal, and the one in question. We are, therefore, of the opinion that the satisfaction piece does not appear to have been the act and deed of the bank, nor to have been signed by the party in whose favor the judgment was obtained.

As to the second objection, it appears that the only judgment obtained, to which it can be supposed the satisfaction piece was intended to relate, was a judgment against the McLeans and Goddard, and not against Flint, while the satisfaction piece describes a judgment " against Charles L. Flint, and others," between the bank, as plaintiff, and the McLeans, Goddard, and Flint, defendants.   There was no such judgment as is described in the satisfaction piece.   On looking into the record which was produced by the plaintiff, we find that Flint was originally named as a defendant, in the summons and complaint, as the indorser of a note made by the other parties.   Flint was not served, and did not appear; consequently no judgment was, or could be, rendered against him. The statute expressly provides (Laws of 1835, Ch. 211, § 1), " that no judgment shall be rendered or record made up against any several drawer, maker, endorser, or acceptor," not served with the process or declaration.

It appears, also, that the assignment of the judgment to the plaintiff, expressly reserved to the bank the liability of Flint.   Conceding that the facts are sufficient to produce the moral conviction that the judgment intended to be discharged by Gould, was the judgment actually recorded; yet this is not a question of Gould's intention, nor an action against a party, who upon the evidence, would be equitably bound to submit to a reformation of the instrument; but whether on the filing of the satisfaction piece the clerk was technically authorized to cancel the docket of a judgment which had been recovered against the McLeans and Goddard, and not against Flint.   We think the clerk could not take upon him

self, to determine that the judgment purporting to be satisfied, was the judgment, the docket of which he assumed to cancel, so as to bind or affect the party who had not, so far as appears, authorized the satisfaction.

As against the bank, since we hold there was no evidence of authority to Gould, and no evidence that it, in fact, received satisfaction, the claim is merely technical; and the plaintiff to recover must show a technically correct authority to the clerk from the plaintiff, to cancel and discharge the docket in question. The conclusion therefore is, that the clerk of Monroe county was not authorized to cancel and discharge the docket of the judgment assigned; and that the cancellation being unauthorized, did not affect the lien of the judgment, or the rights of the plaintiff; and that the nonsuit was properly granted. The motion for a new trial must be denied, and judgment of nonsuit ordered to be entered.

New trial denied.