THOMAS J. POPE, Respondent, *v.* THE BANK OF ALBION, Appellant.

In February, 1866, one B. drew his check, dated March 1, 1866, upon defendant, doing business at A. On the face was written "accepted, A. J. Chester, A. Cash." C., who wrote it, had been appointed assistant cashier by defendant, for the special purpose of signing circulating notes. He wrote it without authority and in violation of duty. B. had no money on deposit. The check was put in circulation in February, and was cashed by plaintiff in New York, on the morning of March 2, 1866, without any other notice of defects save what appeared on its face. In an action upon the so-called check, *held* (LOTT, Ch. C., and EARL, C., dissenting), that in the absence of proof of prior practice or usage, the acceptance could not bind defendant even in favor of a *bona fide* holder;

but that plaintiff could not be held to stand in that capacity, as the acceptance was not the common form used by banks to indicate funds on deposit to the amount of a check, as the acceptance appeared to be by a subordinate officer, whose authority must be shown or facts estopping the defendant from denying it, and as the check, if accepted at date, could not, as appeared by the evidence, have reached New York in the ordinary course of mail at the time it was cashed, which facts were sufficient to put plaintiff upon inquiry.

(Argued October 1, 1873; decided January term, 1874.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, reversing a judgment in favor of defendant, entered upon the report of a referee, and granting a new trial. (Reported below, 59 Barb., 226.)

This action was brought to recover the amount of a check hereinafter described.

The referee found the following facts: That on the 2d day of March, 1866, P. W. Gallaudet presented to the plaintiff, at the city of New York, a check drawn by one O. F. Burns, of which the following is a copy:

"$3,000.                    "ALBION, N. Y., *March* 1, 1866.

"Cashier of the Bank of Albion, pay to self or order three thousand dollars, and charge to the account of

"O. F. BURNS."

Which said check was indorsed by said O. F. Burns, and by said P. W. Gallaudet, and had written on the face thereof the following words:

        "Accepted,          "A. J. CHESTER, A. Cash."

That said Gallaudet requested the plaintiff to cash said check, and plaintiff thereupon, without actual notice of anything tending to impair its validity, beyond what appeared upon its face, and the circumstances attending the transfer thereof to the plaintiff, purchased the same from Gallaudet, and paid him therefor the full sum of $3,000. That the plaintiff thereupon caused said check to be forwarded to Albion for collection, and it was presented to the defendant's bank for payment on the 3d day of March, 1866, when payment was demanded

from the defendant and refused.    That the acceptance written upon the face of said check, was signed by A. J. Chester, in the early part of February, 1866, in violation of his duty as assistant cashier of the defendant's bank, which appointment he then held, the said O. F. Burns, the drawer of said check, not having then, or at any time afterward, any funds in said bank to pay the same, and said acceptance was made without the knowledge or consent of the defendant, and without any authority from it to accept or certify the same.    That said A. J. Chester had been previously appointed by the defendant, assistant cashier, specially for the purpose of signing circulating notes of said bank, and continued to occupy the same position and under the same appointment, until after the 3d day of March, 1866.    That during all the time aforesaid, Lorenzo Burrows was cashier of said bank, and a Mr. Brooks, teller.    That the defendant had never authorized any of its officers to certify checks, but had prohibited them from so doing.    That it is not shown that said A. J. Chester had ever been vested with any of the general powers of cashier or teller of the defendant's bank, or with any other power than the special authority above mentioned.    That said check, accepted or certified as aforesaid, by said Chester, had, during the month of February, 1866, been put into circulation by said O. F. Burns, and had been purchased by said Gallaudet prior to March, 1866.

And, as matters of law, he found that such acceptance being of a post dated check when made in February, 1866, was void, because it was in violation of the provisions of the Laws of 1840, chapters 363, 364, as amended by chapter 251 of the Laws of 1850; also, for want of authority in said Chester to so accept the same.    That neither the aforesaid appointment of the said Chester as "assistant cashier," nor his assumption of such employment in said bank, vested him with any general power to perform the duties of cashier or teller, or to accept or certify any checks upon said bank.    That his acceptance or certification of said check was without authority from or ratification by the defendant, and it was never

bound thereby, nor did it ever accept or certify said draft or check.

He thereupon directed judgment for defendant, which was perfected accordingly.

*Joshua M. Van Cott* for the appellant. The check having been certified without authority and contrary to general usage, defendant is not liable. (*Mussey* v. *Eagle Bk.*, 9 Metc., 306; *F. and M. Bk.* v. *B. and D. Bk.*, 16 N. Y., 126; *Barnes* v. *Ont. Bk.*, 19 id., 152; *Meads* v. *Mer. Bk.*, 15 id., 143; *Bk. of Genesee* v. *Patchin Bk.*, 13 id., 309; *Irving Bk.* v. *Wetherarld*, 36 id., 335; *Claflin* v. *F. and C. Bk.*, 25 id., 293; *Potter* v. *Mer. Bk.*, 28 id., 646; *Mer. Bk.* v. *State Bk.*, 10 Wal., 644, 649; *Clarke Bk.* v. *Bk. of Albion*, 52 Barb., 592; *Bullard* v. *Randall*, 1 Gray, 605.)

*Edgar F. Brown* for the respondent. Plaintiff being a *bona fide* purchaser, and there being nothing to put him upon inquiry he is entitled to recover. (*Davis* v. *Macrady*, 17 N. Y., 230; *Hale* v. *Wilson*, 16 Barb., 550.) Chester was an officer of the bank and plaintiff is not chargeable with notice of any limit or restriction of his duties by the bank. (Story on Agency, § 54; *Sanford* v. *Handy*, 23 Wend., 260; *F. Bk.* v. *D. Bk.*, 16 N. Y., 130; *Stoney* v. *Am. Ins. L. Co.*, 11 Paige, 635; *Clarke Bk.* v *Bk. of Albion*, 52 Barb., 597; *Bk. of Genesee* v. *Patchin Bk.*, 3 Kern., 309, 312, 315; *Catskill Bk.* v. *Stall*, 15 Wend., 364; *State of Ill.* v. *Delafield*, 8 Paige, 527; 2 Hill, 159; *Hern* v. *Nichols*, 1 Salk., 289.) The certificate or acceptance of a check by a bank clearly amounts to a declaration that it is in funds to pay it. (*Thurman* v. *Van Brunt*, 19 Barb., 409; *Kinyman* v. *Houghtaling*, 25 Wend., 423.) Defendant is therefore, estopped from proving that the drawer had not funds with which to pay the check. (*Bk. of Geneva* v. *Patchin Bk.*, 3 Kern., 312, 316; *Irving Bk.* v. *Wetherald*, 36 N. Y., 335; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 id., 73; *Holmes* v. *Williams*, 10 Paige, 326; *Done* v. *Shutt*, 2 Den., 621; *Truscutt* v. *Davis*, 4 Barb., 495; *Dezell* v. *Odell*, 3 Hill, 215.)

REYNOLDS, C. The order reversing the judgment, entered upon the report of the referee, does not state that the reversal was ordered for any error in fact, and·we are compelled to assume that the order was made by reason of some supposed error of law committed by the referee upon the facts found by· him, and, if we find such error, the order must be affirmed, and judgment absolute given against the defendant. The facts, as found by the referee, upon which our judgment must be rendered, are briefly these : On the 2d of March, 1866, one Gallaudet presented to the plaintiff a check or draft of O. F. Burns, dated Albion, March 1st, 1866, directing the cashier of the Bank of Albion to pay to self or order, $3,000, and charge to account of· the drawer. This check was indorsed by Burns and Gallaudet, and, on the face, was written, " Accepted, A. J. Chester, A. Cash." The plaintiff, at the request of Gallaudet, cashed the check, paying its full amount, without any other notice of anything tending to· impair its validity, save what appeared on its face. On the third of March, when presented, the defendant refused to pay the check, and hence this suit for the recovery of its contents, or the amount named in it. It appeared that the acceptance on the face of the check was written by A. J. Chester, in ' the early part of February, 1866, without any authority, and in violation of duty, and that Burns had no money deposited with the defendant, to represent the check in any form. Previous to that date Chester had been appointed assistant cashier· of the bank, for the special purpose of signing its circulating notes, and occupied that position until after the 3d of March, 1866. During all that time, Lorenzo Burrows· was cashier, and a Mr. Brooks was teller, of the defendant's bank, and no one of the defendant's officers was authorized to certify checks, but, in. fact, prohibited from so doing. Chester certainly had never been vested with any such authority. The check in question had, during the month of February, 1866, been put in circulation by Burns, and had been purchased by Gallaudet, prior to its date. If Gallaudet had held the check, and brought the action, he might certainly

have been charged with notice of some irregularity, on account of receiving it before the day of its date, and it is possible that the plaintiff is chargeable with a like infirmity of title. The officers of the defendant not only were not authorized to certify checks, but they were prohibited from so doing. It does not appear that any officer of the bank, and least of all the assistant cashier, has been accustomed to make certifications in violation of duty, and certainly never to the knowledge of the plaintiff, and he did not cash the check in the present case upon the faith of any such practice. The check in controversy was unquestionably put in circulation long before its date, but no actual knowledge of the fact is directly traced to the plaintiff, so far as I can discover, beyond what is to be inferred from the very nature of the transaction.

It is not necessary to the decision of this case to attempt to define with accuracy the exact limit of the liability of a bank for the act of its cashier or other general officer, apparently done within the scope of their authority and in its legitimate business. Where there is no authority for the act called in question, a general or particular usage in a given direction will bind the bank to respond to a third party who deals with it in good faith. (*Bank of Genesee* v. *Patchin Bank*, 13 N. Y., 309; *Potter* v. *Merchants' Bank*, 28 id., 641; *Farmers' and M. Bank* v. *Butchers and Drovers' Bank*, 16 id., 126; *Barnes* v. *Ontario Bank*, 19 id., 152; *Murrey* v. *The Eagle Bank*, 9 Metc., 306.) In the present case, neither authority or usage is proved or found by the referee to sustain the act of Chester, but the fact is just the contrary. Perhaps we might assume that a cashier by virtue of his general authority, in the absence of proof of any restriction upon it, could certify that the check of a customer was good, and thus bind the bank in favor of a *bona fide* holder, whether, at the time, the customer had funds or not. (*Wilde* v. *Passamaquoddy Bank*, 3 Monroe, 505.) And it may be that the general usage of banks would require us to hold in the same way where we have the proof that, in this respect, this power of the cashier has been specially

restricted, and that no such usage had ever been practiced by any of the officers of the bank. In the case of a subordinate officer or clerk it may be affirmed, as a general rule, that his authority for any act out of the mere ordinary routine of banking business must be shown, in order to bind the bank. (*Potter* v. *The Merchants' Bank of Albany*, 28 N. Y., 641.) Where a subordinate officer or clerk has been permitted to pursue a particular practice in certifying checks, for customers or otherwise, his acts, although wrongful, will bind the bank in favor of a person who fulfills the conditions of a dealer in good faith. (*Farmers' and M. Bank* v. *Butchers and Drovers' Bank*, 16 N. Y., 126.)

Being satisfied that the act of Chester was wholly without authority, and unsustained by any prior practice or usage, the plaintiff could not recover if he is to be regarded as a *bona fide* holder in all respects. But we think he can hardly be held to sustain that legal relation. The paper upon which the liability rests is more like a bill of exchange than an ordinary bank check, and the word "accepted" is commonly used to denote that the party making the acceptance will pay the bill of exchange at some subsequent day, and it is not commonly used by banks and bankers to indicate that the drawer has, at the very time, funds on deposit equal to the amount which the check or draft represents. It was also apparent, upon the face of the so-called check, that it had been accepted or certified by a subordinate officer, if the words "A. Cash" are held to mean assistant cashier, and he therefore took the risk of showing that Chester had the requisite authority or that the bank was estopped from denying it. Besides, the check was dated at Albion on the 1st of March, 1866, and, if it was assumed to have been a transaction in the ordinary course of business, was accepted or certified within the usual banking hours at Albion on the day it bore date. It was purchased by the plaintiff on the morning of the following day (March second), and it seems reasonably certain, from the evidence, that if "accepted" at Albion on the first it could not, in the ordinary course of the mail, have reached

New York until the afternoon of the following day; and of this fact the plaintiff was bound to take notice. It was sufficient to put him, at least, upon inquiry. It was, in fact, put in circulation in New York a considerable time before it bore date. We must assume from the evidence on the part of the plaintiff, and on the finding of the referee, that under such circumstances the plaintiff did, on the morning of the 2d of March, 1866, pay the full face of the check, without any regard to interest or the difference of exchange, and without any such inquiry as would have, on the same day, advised him of the infirmity of the transaction.

The order of the General Term must be reversed, and judgment entered on the report of the referee affirmed with costs.

For reversal, REYNOLDS, JOHNSON and GRAY, CC.

For affirmance, LOTT, Ch. C., and EARL, C.

Order reversed, and judgment on the report of referee affirmed.