# 𝕮𝖆𝖘𝖊𝖘

# SECOND DEPARTMENT

AT

# GENERAL TERM,

## July, 1875.

---

BAILEY HASCALL, Respondent, v. THE LIFE ASSOCIA-
TION OF AMERICA, Appellant.

*Corporation — misnomer of, in draft — acceptance by agent — when corporation
bound by.*

"The West Tennessee Department of the Life Association of America," a duly
organized branch of the defendant, agreed, in July, 1872, to loan $10,000 to one
Cocke, to be secured by a mortgage upon real estate in Memphis, the money
to be advanced October 15, 1872, although the mortgage was delivered at the
time of making the agreement. Subsequently, Cocke, desiring to use the
money, drew a draft payable October 15, 1872, addressed by mistake to "The
Western Department of the Life Association of America," which was accepted
by the general manager of the West Tennessee Department of defendant, as
follows : "Accepted. B. H. Robertson, Manager." In an action brought upon
the acceptance by an indorsee of the draft, *held* (1), that it was clear that the
draft was intended to be drawn upon, and the acceptance made by, that branch
of the defendant which was located at Memphis; (2), that, as it appears that
Robertson accepted the draft in the business and in behalf of the corporation,
and intended and assumed to contract in its behalf, it was liable thereon.

When a corporation authorized to make loans on certain securities has received
and approved the same, although for its own convenience the payment of
the money is postponed until a future day, it may bind itself by accepting a
draft for the amount of the loan drawn by the borrower, payable on such future
day.

The supervising agent of the department, who is its executive officer, and who
has the care and management of its business under the direction of the

general board of managers, may accept such a draft, in the absence of proof of any restriction upon the general powers conferred upon him.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury.

This action was brought upon a draft claimed to have been accepted by the defendant, a corporation organized under the laws of the State of Missouri.

*James Emott,* for the appellant. The draft was not drawn upon the defendant corporation, but upon a body described as " The Western Department of the Life Association of America." There is no such department, and Mr. Robertson was not the manager of any such department, and therefore the paper is void. Mr. Robertson was not authorized as manager to accept drafts or bills of any description upon either the West Tennessee Department, or upon the Life Association of America, the defendant. (*Hoyt* v. *Thompson,* 1 Seld., 320; *Risley* v. *The Indianapolis, Bloomington and Western Railway Co.,* 8 S. C. [1 Hun], 202; *Adriance* v. *Roome,* 52 Barb., 399.) The acceptance of B. H. Robertson, the manager, is the acceptance of Robertson individually, the word " manager" being merely *descriptio personæ.* (*Moss* v. *Livingston,* 4 Comst., 208; *Dewitt* v. *Walton,* 9 N. Y., 571; *Pentz* v. *Stanton,* 10 Wend., 271.) The defendant had not the power to make the acceptance in question either by its specific or incidental powers. (*Bank of Genesee* v. *The Patchin Bank,* 13 N. Y., 314.)

*John E. Parsons,* for the respondent. The draft clearly indicates that it was not Robertson who was to accept it, but the company of which he was an officer. The acceptance, therefore, was the acceptance of the defendants, not the acceptance of Robertson. (*Rathbon* v. *Budlong,* 15 Johns., 1; *Safford* v. *Wyckoff,* 1 Hill, 11; *Olcott* v. *The Tioga R. R. Co.,* 27 N. Y., 546, 559, approving the above cases; *Babcock* v. *Beaman,* 11 id., 200.) A mere mistake may always be corrected, and parol evidence is admissible for the purpose. (Chitty on Bills, 156, citing *Willis* v. *Barret,* 2 Stark., 29; *Meade* v. *Young,* 4 Term, 28.) This is not a case of parol evidence to charge a defendant upon a bill which does not show upon its face that it was intended that it should be accepted by

him. (*Pentz* v. *Stanton*, 10 Wend., 275.) At the most it was but a mistake of name, and the maxim is *nil facit error nominis, cum de corpore vel personâ constat.* (Broome's Maxims, 493; *Langdon* v. *Astor's Executors*, 3 Duer, 447, 610.) The draft was filled out by Mr. Tobey, the treasurer of the defendant's West Tennessee department. It was he who saw fit to use the term "Western Department." A party may become bound as the acceptor of a draft by any designation he thinks proper to adopt. (*Brown* v. *Butchers and Drovers' Bank*, 6 Hill, 443; *Rodgers* v. *Coit*, id., 322; *Dewitt* v. *Walton*, 9 N. Y., 571, approving the preceding cases.) The mortgage and note of Cocke and wife were received by the defendants, and are now held by them, in the ordinary course of their authorized business. As they had the power to loan, so the defendants had the right to agree to make a loan (*Halstead* v. *Mayor, etc.*, 3 N. Y., 430; *Barry* v. *Merchants' Ex. Co.*, 1 Sandf. Ch., 280, and cases cited; *Thompson* v. *The N. Y. and H. R. R. Co.*, 3 id., 625); and if they had the right to agree to make a loan, of course they had the power to fix the time when the money should become payable. They could give a check payable at a future day, and so they could give for it the acceptance in question.

TALCOTT, J.:

The defendant is sued as the acceptor, under the name of the Western Department of the Life Association of America, of a negotiable draft, by an indorsee. Various objections to the recovery are made, which will be considered in their order. It is objected that the name under which the acceptance was made is not the corporate name of the defendant, and, therefore, that the acceptance in question is not the obligation of the defendant. The defendant is a corporation, created by an act of the legislature of Missouri, with the general purposes and powers of a life insurance company. The charter expressly authorizes the company to establish "organized departments and branches of the association" in each State, territory or foreign country in which it shall transact business, and further provides that "the general board of directors may create departments of the association, and designate the territory to be included within the same, and the names by which they shall each be known." The corporation established thirty-three such depart-

ments, or branches, in different localities. One of these departments was located at Memphis, and was usually described as the "West Tennessee" department. The draft in question was drawn at Memphis, and addressed to "Western Department of Life Association of America." It appeared that the State of Tennessee was divided into three departments, respectively known as the east, middle and west, and the office at Memphis is described by the manager of the company at that place, as the office for the "Western Department." The origin of the draft was as follows: The defendant had, previous to July 6th, 1872, agreed to make a loan of $10,000 to Mr. Thomas H. Cocke, on the property of Mr. and Mrs. Cocke, at Memphis, and the mortgage had been executed and delivered to the defendant, but, by the agreement of the parties, the money was not to be actually advanced until the 18th day of October, 1872. For his own convenience, Mr. Thomas H. Cocke desired to avail himself of the funds before the time when they were to be actually advanced by the defendant; and after the title papers had been examined and approved by the proper officers of the company, and the arrangement was fully consummated, with the exception of the actual advance of the money, Mr. Cocke drew the draft in question, payable on the 15th day of October, 1872, for $10,000, the amount of the loan agreed upon, payable to the order of "J. S. Hatcher & Co." The draft was accepted in the following form: "Accepted. B. H. Robertson, Manager." Mr. B. H. Robertson, who accepted the draft, was the manager of the department located at Memphis, and the draft was there accepted by him, with the knowledge and consent of Mr. Tobey, the treasurer of that department. It did not formally appear in the evidence that the general board of directors had designated the name by which the department located at Memphis was to be known. From the facts, it is clear that the draft was intended to be drawn upon, and the acceptance made by, that branch of the corporation which, in pursuance of the charter, was located at Memphis. It was so understood by all the parties, and the draft was drawn and accepted as incidental to the business of that department or branch. Under these circumstances, there can be no doubt that, if valid at all, it was the contract of the defendant, notwithstanding the misnomer, if such there was. A party may be bound as an acceptor by any

name or designation he may see fit to adopt, provided it clearly appears, by extraneous evidence, who was intended. (*Brown* v. *Butchers and Drovers' Bank*, 6 Hill, 443; *Rogers* v. *Coit*, id., 322; *De Witt* v. *Walton*, 9 N. Y., 571.) The party who has intended to contract by a certain designation, is estopped to deny that the name by which he assumed to enter into the contract is the appropriate appellation. This doctrine applies as well to corporations as to individuals. It is claimed that the acceptance of Robertson, with the addition to his name of the word "manager," does not purport to be the contract of the company, but that the name of his office is merely a *descriptio personæ*, and that the acceptance is binding on Robertson personally, instead of the defendant. When the transaction is shown to be in the business of a corporation, and on its behalf, the signature of its proper agent, with the name of office attached, is, in legal effect, the contract of the corporation, and not of the officer individually. Robertson intended and assumed to contract in behalf of the corporation, and the acceptance was received as the contract of the corporation. (*Babcock* v. *Beman*, 11 N. Y., 200; *Brockway* v. *Allen*, 17 Wend., 40; *Bank of Genesee* v. *The Patchin Bank*, 13 N. Y., 309; S. C., 19 id., 312.)

This acceptance then was, in point of *form*, sufficient to charge the defendant, and the only remaining question is as to its validity: Whether the defendant can be bound as a party to a negotiable security, and whether Robertson had authority so to bind it? The defendant had agreed to make the loan in question. To make such loans on such securities, was within the purview of its chartered powers. For its own convenience it postponed the actual advance of the money till a future day. It had received and approved the securities, and there can be no doubt that its mere promise, or agreement, to advance the money on the fifteenth of October was valid and binding. In such a case it is well settled that a corporation may bind itself by becoming a party to a negotiable security incidental to its legitimate business. (*Mott* v. *Hicks*, 1 Cow., 513; *Barker* v. *Mechan. Ins. Co.*, 3 Wend., 96.)

The authority of Robertson to act for the defendant in the premises, seems to be sufficiently clear. The charter of the defendant provides that "there shall be in each department a supervising

agent, who shall be known as the *general manager* of said department, and who shall have the care and management of the business of the department, under the direction of the general board of directors.  *·  *  *    He shall be the executive officer of the department." Robertson was the officer thus described and provided for, and he states, as the facts and circumstances show, that ·he accepted the draft as such manager, for and in behalf of the defendant.    Under these circumstances he had the power to accept the draft in behalf of the company, in the absence of any proof of any restriction upon the general powers conferred upon him by the charter and the nature of his office.    The title to the draft was legally transferred to the plaintiff, and as the draft and acceptance were valid in form and substance, and founded on a good consideration, within the legitimate purview of the powers of the defendant, it was a valid negotiable instrument.    The acceptance was indorsed by the drawees and delivered to the City Bank of Memphis.    It is claimed that it was agreed by the president of that bank, who was also the treasurer of the defendant's branch at Memphis, that the paper should not go into general circulation, but should be held by the bank, as security for advances to be made by that bank to the drawees.    But it appeared that the draft and acceptance were offered by the cashier of the City Bank of Memphis to P. M. Myers & Co., to be discounted by them.    They were the correspondents, at New York, of the bank.    Myers & Co. refused to discount the draft.    The cashier of the City Bank of Memphis wrote to the president of the defendant at St. Louis, giving a full description of the draft and acceptance, and inquiring if the defendant would discount it.    To this the president replied : " The draft being for a loan, should be presented at Memphis ; if securities are proper there is no reason why the draft should not be paid at maturity."    Myers & Co. agreed to hold the draft and acceptance as collateral for advances to the City Bank ; and·the cashier of the City Bank of Memphis exhibited the dispatch from the president of the defendant to Myers & Co., after which they advanced to the City Bank of Memphis the full amount of the acceptance.    It is not claimed that Myers & Co. had any notice of the agreement not to put the draft into general circulation, or that there was any restriction upon, or qualification of, the ownership of the draft by the

City Bank of Memphis. Myers & Co., therefore, as the jury has found, became the holders for value of the acceptance before maturity, and without notice of any circumstance affecting the title of the City Bank of Memphis, as the holder of the draft and acceptance. The plaintiff claims under Myers & Co., and can assert their title, and is entitled to the protection to which they would be entitled, as the holders of the paper for value and without notice of any defense. It therefore becomes immaterial to examine the details of the charge upon the question of the estoppel claimed. The verdict and judgment seem to have been correct, and the judgment is affirmed.

Present — BARNARD, P. J., and TALCOTT, J.

Judgment affirmed, with costs.