COLLIS P. HUNTINGTON, Respondents *v.* HENRY G. ATTRILL et al., Appellants.

118   365
118   386
118   365
127   469

118   365
147   325

118   365
151    66

In an action against an officer of a corporation, incorporated under the act of 1875 (Chap. 611, Laws of 1875), providing for the organization of certain business corporations, to enforce the liability for a debt of the corporation imposed by said act (§ 21), because of the signing of a certificate or report false in a material representation it is not necessary to show knowledge on the part of the officer at the time of signing; proof that the writing is untrue, "in any material representation" is sufficient.

The provision of said act giving such remedy, is' not violative of the constitution.

On trial of such an action the jury are not required to give the defendants the benefit of any reasonable doubt, in the sense applicable to criminals; but may govern their action in reaching a result by the fair preponderance of evidence.

The "fair value" contemplated by the provision of said act (§ 14), prohibiting the issuing of stock, of a corporation organized under it, for property, except for "property actually received for the use and legitmate purpose of said corporation, at its fair value" is that which the property has at the time of the sale; it is not dependent upon the subsequent success or failure of the investment, further than that result may have been legitimately within evidential contemplation at the time of the sale, in view of the uses for which it may have had available advantages within itself.

In an action under said act, against directors of a corporation organized under it, the alleged false representation was that the whole capital stock, $700,000, had been fully paid in. The object of the corporation, as stated in its certificate of organization, was the purchase of lands and building thereon a seaside hotel, bath-houses, etc. It appeared that the whole stock was issued to A., one of the defendants, in payment for 120 acres of land on the sea shore which was conveyed, subject to a mortgage of $72,000, the payment of which was assumed by the company.

This land was part of 140 acres purchased by A. six months before the organization of the company, and in contemplation thereof, for $80,000, of which he paid $8,000 and gave the said mortgage to secure the balance. The defendants were directors of the company at the time of the convey-ance of the property to it. The land had no known market value at that time, or intrinsic value of large amount, disconnected from a pur-pose to make a use of it such as was contemplated. Defendants offered evidence on the question of value, based upon comparison with other sea-side property at different places, which was objected to and excluded. *Held*, no error.

Opinions of witnesses as to value, founded solely upon transactions in other property along the coast, not in the vicinity of that in question, was excluded. *Held*, no error.

Defendants counsel asked the court to charge that by the words "at its fair value" in said act was meant" the fair value of such property for the uses and purposes of the company in the conduct of its legitimate business, and not the actual market value or the actual instrinsic value thereof at the time it is acquired." In response the court stated it knew of no value other than instrinsic or market value, and then charged that the jury had the right to consider, in determining the fair value, its value for the use to which it was to be put and the adaptability of it to any specific purpose; that these are constitutent elements of instrisic value and although the value to be ascertained was at the time of the sale, any peculiar advantages, known or unknown, and which, even if known, would make it advantageous to a few only, properly entered into the consideration. *Held*, no error.

The debt which plaintiff sought to recover was a loan negotiated by S., the manager of the company, for which he gave his own note, payable to its order and indorsed by him in the name of the company, giving as collateral, mortgage bonds of the company. Defendants disputed the authority of S. to make the loan and claimed the debt was not that of the company. Plaintiff was permitted to prove entries in the books of the corporation in relation to the loan. *Held*, no error; that the evidence was competent to show the company had the benefit of the loan, as bearing upon the question as to whether it was its debt.

In response to a request by defendants to charge that before a verdict could be found for plaintiff the jury must be satisfied by affirmative proof that S. was authorized to indorse the name of the company, by prior resolution of the executive committee or board of directors or by ratifica tion, by resolution, or some equivalent act, the court charged that the jury must find either prior authority, or subsequent ratification, which could be evidenced by general course of business as well as by resolution *Held*, no error.

Plaintiff was permitted to prove, on the question of value, that the land purchased, with extensive improvements thereon, was afterwards sold at judicial sale for $175,000. *Held*, no error.

*It seems* that officers assuming the responsibility and charged with the duties of the management of the business of a corporation are chargeable with knowledge as to matters which are open to observation and legitimately subject to their inspection and control.

*Schenck* v. *Andrews* (57 N. Y. 133); *Boynton* v. *Andrews* (63 N. Y. 93); *Douglass* v. *Ireland* (73 N. Y. 100); *Pier* v. *Hanmore*, (86 N. Y. 95); *Bonnell* v. *Griswold* (89 N. Y. 122), distinguished.

Reported below (42 Hun, 459).

(Argued December 6, 1889; decided January 28, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 14, 1886, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts are sufficiently stated in the opinion.

*James C. Carter* for Henry Y. Attrill appellant. The act of 1875, and prior statutes of the same character, are not within the lawful exercise of legislative power and are void. (*Veeder* v. *Baker*, 83 N. Y. 156; Morawetz on Corp. [2d ed.], §§ 907, 908, 909; *Mitchell* v. *Hotchkiss*, 48 Conn. 9; *Garrison* v. *Howe*, 17 N. Y. 458; *M. Bank* v. *Bliss*, 35 id. 412; *Jones* v. *Barlow*, 62 id. 202; *Bruce* v. *Platt*, 80 id. 379; *Pier* v. *Hausman*, 86 id. 95, 106; *Arthur* v. *Griswold*, 55 id. 400; *Bonnell* v. *Griswold*, 80 id. 128; *Bonnell* v. *Blake*, 89 id. 122; Constitution, art. 1, § 5; *O. & M. R. R. Co.* v. *Luckey*, 78 Ill. 55; *Fletcher* v. *Peck*, 5 Cranch. 135; *Wynehamer* v. *People*, 13 N. Y. 378–390; *In re L. & Co. Bank*, 20 id. 9; *Crawford* v. *Lockwood*, 9 How. Pr. 547; Cooley on Const. Lim. [5th ed.] 216.) If the twenty-first section of the act of 1875 is to be interpreted, as the Supreme Court has in a recent decision (*Torbett* v. *Eaton*, 49 Hun, 209), interpreted it, namely, as imposing the penalty in case the report happens to be in fact *untrue*, however honestly the signers may have believed it to be true, the objection of constitutionality would scarcely need argument, but the interpretation is erroneous. (Abbott's L. Dict., 478; *Schenck* v. *Andrews*, 57 N. Y. 133; *Boynton* v. *Andrews*, 63 id. 93.) It is submitted that the false report or certificate

mentioned in the twenty-first section of this act means one which is fraudulently false; that is to say, not merely one which is untrue to the knowledge of the party signing it, but one which was made for some affirmative fraudulent purpose. (Kerr on Fraud [2d Eng. ed.], 3–5, 16–19 ; *Pier* v. *Hanmore*, 86 N. Y. 95 ; *Bonnell* v. *Griswold*, 85 id. 122.) Grave errors were committed in the admission and exclusion of evidence as to value of the property. *Reed* v. *R.*, *W. & O. R. R. Co.*, 48 Hun, 231 ; *Sthurm* v. *Williams*, 6 J. & S. 325.) There was no evidence given which would furnish any just support for the finding that the defendants knew that the certificate was untrue and the defendants' motion to dismiss the complaint, or to direct a verdict in their favor, should have been granted. (*Boynton* v. *Andrews*, 63 N. Y. 93 ; *Bonnell* v. *Griswold*, 89 id. 122.) The plaintiffs were permitted to prove, and this by hearsay evidence derived from the books of the company, what its indebtedness was, both at the time of the issue of stock (April 27, 1880), and also at the time of the filing of the report (July 1, 1880). A two-fold error was thus committed. The fact sought to be proved was immaterial, but dangerously calculated to mislead; and the evidence was incompetent to prove the fact. (Whart. on Ev. [3d ed.] § 662; *Mudgett* v. *Howell*, 33 Cal. 25 ; *Blake* v. *Griswold*, 103 N. Y. 429, 435 ; Taylor on Ev., § 1781; 3 R. S. 738.) The refusal of the court to charge that the jury must find that they had knowingly and intentionally overvalued the property, and that they must find that they dishsnestly and fraudulently overvalued it was error. (*Pier* v. *Hanmore*, 86 N. Y. 95; *Bonnell* v. *Griswold*, 89 id. 122.) The court erred in refusing to charge that, if the jury possibly believed that the statements of the reports were true, they should find a verdict for the defendants, and in stating that the plaintiffs could sustain the burden of proof imposed upon them by " a fair preponderance of evidence." (Whart. Crim. Ev. § 330 ; *N. Y. G. Co.* v. *Gleason*, 7 Abb. [N. C.] 334, 357.)

*Coles Morris* for Henry Y. Attrill appellant. There was a total failure of competent evidence, as against these defend-

ants, to prove any cause of action by the plaintiff against the Rockaway Beach Improvement Company. (*Furniss* v. *Hollander*, Edm. S. C. 470; Code Civ. Pro., § 923; *O. N. Bank* v. *Fant*, 50 N. Y. 474.) The motions to dismiss the complaint or to direct a verdict for the defendants, which were made at the close of the case, should have been granted. (*Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 365, 366; *Cotton* v. *Ward*, 8 C. B. [N. S.], 568; *Hayes* v. *T. S. R. R. Co.*, 97 N. Y. 259; *Dwight* v. *G. L. Ins. Co.*, 103 id. 358, 359; *Schwinger* v. *Raymond*, 105 id. 648; *Shultz* v. *Hoagland*, 85 id. 464; *Morris* v. *Talcott*, 96 id. 100; *Dillon* v. *Dillon*, 7 Eng. Ecc. R. 371, 391; *Pollock*, v. *Pollock*, 71 N. Y. 142.) The court below erred in allowing the plaintiff to show that, after the failure of the company, the property in question, with the hotel on it, which had cost over $900,000, was sold at auction for $175,000. (*Schenck* v. *Andrews*, 57 N. Y. 150.) It was error to exclude either of the three questions put to Mr. Attrlll to show that he acted in entire good faith in making the certificate, which is the ground of the action. (*Seymour* v. *Wilson*, 14 N. Y. 567; *Foster* v. *Cronkhite*, 35 id. 139; *Cortlandt County* v. *Herkimer County*, 44 id. 22; *Starin* v. *Kelly*, 88 id. 418.) In a case like this, in which the main facts necessary for the plaintiff to establish are disputed upon the evidence on behalf of the defendants, and where, upon the whole case, the jury could have found for the defendants, and their verdict could not have been disturbed as against the evidence or the weight thereof, it is well settled that such errors cannot be overlooked by the appellate court. (*N. Y. G. & I. Co.* v. *Gleason*, 78 N. Y. 514–517; *Smith* v. *Crego*, 7 N. Y. Supl. 86; *Shultz* v. *Hoagland*, 85 N. Y. 464; *Morris* v. *Talcott*, 96 id. 100; *Green* v. *White*, 37 id. 405; *Stokes* v. *People*, 53 id. 183; *Smith* v. *Shoemaker*, 17 U. S. 630, 639.)

*Delos McCurdy* for William R. Soutter, appellant. The complaint alleges that "each of the defendants, when he signed and verified said certificate and caused the same to be

recorded, knew the same was false" in the particulars stated in the complaint. This was a necessary allegation; and in order to maintain the action it was incumbent upon the plaintiff to prove affirmatively facts requisite to support this allegation of the complaint. (Laws of 1848, § 12; Laws of 1875, § 21; *Bruce* v. *Platt,* 80 N. Y. 379; *Garrison* v. *Howe,* 17 id. 458; *Miller* v. *White,* 50 id. 137; *W. A. Co.* v. *Barlow,* 63 id. 62; *Chase* v. *Curtis,* 113 U. S. 452–463; *Stokes* v. *Stickney,* 96 N. Y. 323; *Knox* v. *Baldwin,* 80 id. 610; *Pier* v. *George,* 86 id. 613; *Stevens* v. *Fox,* 83 id. 313; *Veeder* v. *Baker,* Id. 156; *Easterly* v. *Barber,* 65 id. 252; *Wales* v. *Suydam,* 64 id. 173; *Pier* v. *Hanmore,* 86 id. 95–103; *Bonnell* v. *Griswold,* 89 id. 126; *L. S. I. Co.* v. *Drexel,* 90 id. 92; *Douglass* v. *Ireland,* 73 id. 100; *Brockway* v. *Ireland,* 61 How. Pr. 372; *Schenck* v. *Andrews,* 57 N. Y. 133; *Boynton* v. *Andrews,* 63 id. 93; *Pier* v. *George,* 17 Hun, 207; *Bonnell* v. *Griswold,* 68 N. Y. 294; *Thurber* v. *Thompson,* 21 Hun, 474; *Wakeman* v. *Dalley,* 51 N. Y. 27–35; *Oberlander* v. *Speiss,* 45 id. 175; *Myer* v. *Ammidown,* 45 id. 169; *Marsh* v. *Falker,* 40 id. 562.) It was manifest error on the part of the learned trial judge to restrict the jury to a determination of the value of the land on the 10th of April, 1880, when Attrill conveyed it to the company, and to exclude from the jury all other considerations affecting its value, or which might fairly influence the judgment of those engaged in the enterprise as to its actual value. (*Schenck* v. *Andrews,* 57 N. Y. 142, 143, 144; *Boynton* v. *Andrews,* 63 id. 93; *Douglas* v. *Ireland,* 73 id. 100; *Brockway* v. *Ireland,* 61 How. 373; *Thurber* v. *Thompson,* 21 Hun, 472; *L. S. I. Co.* v. *Drexel,* 90 N. Y. 87; *Pier* v. *Hanmore,* 86 id. 95.) No previous authority was proved to have been given B. E. Smith, as general manager, to borrow money for the use of the company, execute notes therefor and pledge bonds or other property of the company to secure the payment of these notes; nor was any subsequent ratification or acquiescence on the part of the company shown. Neither was it proved that the money borrowed by Smith, and for which he gave these notes, was applied to the use of the com-

pany, nor that the company derived any benefit therefrom, or from any part thereof. (*Queen* v. *S. A. R. R. Co.*, 3 J. & S. 154–159; *Alexander* v. *Cauldwell*, 83 N. Y. 480–485; *Beveridge* v. *N. Y. E. R. Co.*, 112 id. 1; *McCullough* v. *Moss*, 3 Denio, 567; *Niagara* v. *Bachman*, 66 N. Y. 262; *Bank* v. *Clements*, 2 Bosw. 600; *People's Bk.* v. *S. A. R. C. Church*, 109 N. Y. 512; *Marvin* v. *Wilbur*, 52 id. 270.)

*W. W. MacFarland* for respondents. 1. Directors must know that the certificates made by them are true at their peril. (*Torbett* v. *Eaton*, 17 N. Y. S. R. 117; 113 N. Y. 623.)

BRADLEY, J.    The action was brought to recover the amount of a debt alleged to be due the plaintiff from the Rockaway Beach Improvement Company (limited), a corporation created pursuant to the provisions of the statute providing for the organization and regulation of certain business corporations. (Laws of 1875, chap. 611.) The defendants were directors of the company. And the alleged ground of the action is that a certificate signed by them, representing that the amount of the capital stock of the corporation, amounting to $700,000, was fully paid, was false within the meaning of the statute, which provides that "If any certificate or report made, or public notice given, by the officers of any such corporation, shall be false in any material representation, all the officers who shall have signed the same, shall be jointly and severally liable for all the debts of the corporation, contracted while they are officers thereof." (Id. § 21.) The certificate of organization was filed with the secretary of state, February 18, 1880, in which it was stated that the capital stock would be $700,000, divided into 7,000 shares of $100 each; that the principal business office would be at Rockaway Beach, N. Y.; and that the object for which the company was to be formed and the nature of its business, were the purchase of lands and the building of a hotel thereon, together with bath-houses, piers and a theatre and such other accessories as were usual or necessary for the completion and operation of the hotel

business at a seaside watering place. This to be done at Rockaway Beach, in Queens county, N. Y. Books were opened, pursuant to the requisite license, for subscriptions to the capital stock of the company, the full amount was subscribed, and afterwards the defendant Attrill by deed of date April 1, 1880, conveyed to the corporation about 120 acres of land situated at Rockaway Beach, in the town of Hempstead, county of Queens, subject to a mortgage of $72,000, the payment of which was assumed by the company. This deed was made and taken in payment of the full amount of the capital stock, no part of which was paid for in cash. The certificate, alleged by the plaintiff to have been false was made by the defendants and other directors, June 30th, and filed about July 1, 1880, in which they represented "that the amount of capital paid in, in full, is the sum of $700,000, being the full amount of the capital stock of the said company." The value of the land conveyed by Attrill to the company was the subject of conflict of evidence given in behalf of the respective parties, and the conclusion was warranted that $700,000 was largely in excess of its value. The view of the trial court was, that although the value of the property may have been less than the amount of the capital stock, in payment for which it was taken by the company, that fact alone did not render the certificate false within the meaning of the statute or charge the defendants with liability, but it was dependent upon the further fact that they knew, when the certificate was made, that the value of the land so taken was materially less than the amount of the capital stock, and thus was involved the question of the good faith of the defendants, so far as it had relation to their understanding or belief of the equivalency or otherwise of such value and amount. As bearing upon that subject it appeared by evidence, in addition to the value, that in July, 1879, in contemplation of the organization of this company and for the purposes before mentioned, the defendant purchased and took conveyance of 140 acres of land, of which that so conveyed to the company was a portion, for $80,000, of which he paid $8,000 and gave the mortgage

above referred to, to secure the payment of the residue of the purchase-money. It was also contemplated that this land conveyed to the company should constitute in the outset all its property and assets, and that the means to carry forward the project in view should be derived from the sale of bonds of the company secured by mortgage upon the land. It was to be the basis for the revenue to meet its financial requirements in the expensive enterprise in view. This did not necessarily furnish information that the property had less value than it was in the certificate represented to have, but the fact that the purpose was to so greatly burden it for resources, would seem to have called attention to its ability in value to bear it. It evidently was known to the defendants that the value of the land, whatever it was, was speculative in so far that it was dependent upon its successful availability for an enterprise something like that upon which the movers in it were to and did enter. It could not be said to have had either a market or intrinsic value of large amount disconnected from a purpose to make such a use of it. It may be that expectation of success enabled the defendants to believe that it had the value which they so represented it had. It seems by what followed that such belief, if it existed, was unfounded. No later than in April, 1880, the company had incurred liabilities amounting to upwards of $400,000, which on the first of July following had increased to $994,000, without any means to pay them, and that in August, 1880, its property was taken into the custody of a receiver appointed by the court for that purpose. It is true that all this may have been consistent with a mere mistaken belief, or error in judgment of the defendants and those associated with them, and thus they might be relieved from the imputation of knowledge that the value certified was excessive or that they purposely misrepresented it. There were some circumstances which might be construed as tending to support that view. The property was situated on the beach and was to be made easily accessible to the people of the cities of New York and Brooklyn, by means of a then projected railroad (known as the New York, Woodhaven and Rock-

away Beach railroad which was afterwards constructed) running into it, which may have been supposed to make that location desirable as a seaside resort. This seemed to have been one of the leading considerations which gave inception to the enterprise. This railroad project was said to be under the control of one Smith, who was actively associated with defendant Attrill in the outset, and who became the manager of the business of the company. And the fact that Attrill advanced considerable money to start, in progress, improvements on the property was a circumstance bearing upon the question of his faith in the movement, although he expected reimbursement from the company of his advances. And the same may be said of the expenses he incurred in putting gas-works on adjacent property, the practical availability of which, is said to have been somewhat dependent upon the use to be made of gas for light upon the premises in question. His expectations, whatever they were, had importance upon the question so far only, as they had a bearing upon his knowledge or belief as to the value of the property at the time of the sale of it to the company. Its then value was the measure of consideration which the company had the right to pay for it. These defendants were directors at the time of the sale and convey ance of the property to the company. They, with their associates, had the responsibility of seeing to it that the purchase-price did not exceed the fair value. That was the command of the statute. (Id. § 14.) There are considerations of public concern which require the proper discharge of duty in that respect, so that the appearances given by reports and certificates, filed pursuant to statute and representing the financial condition of corporations, may not delusively bring to them credit to the prejudice of those giving it.

The means of judging of the knowledge which the defendants had and upon which they acted, and the motive by which they were influenced, must be derived from the circumstances treating those persons as men of ordinary discernment and sagacity. The officers assuming the responsibility and charged with the duties of the management of the business of corpora-

tions, are not supposed to shut their eyes to that which is open to observation and legitimately subject to their inspection and control. The defendant Attrill was familiar with the property. It had no known market value. The sum which constituted the consideration of the sale to the company was in some sense arbitrary, governed, perhaps, by the amount which it was assumed the contemplated improvement would cost; and before the company was organized he, for some reason, desired to be relieved from his situation in relation to the property. He says this was because Smith, his associate in the enterprise and who was to take half the profits of it, had become obnoxious to him. But the relation was continued, and Smith was made manager of the business of the company. The enterprise may have been treated wholly as one of speculation, resting on expectation and dependent upon its success. The amount for which the property was handed to the corporation was large in comparison with the sum for which it was purchased by the defendant, and was large in fact. The circumstances, some of which have not been specifically referred to, were such as to furnish to Attrill information that the property conveyed by him to the company, was not worth an amount equal to that of the capital stock, and, having found that it was not worth that sum, the jury were warranted in finding that, at the time he signed the certificate, he knew that such consideration was considerably in excess of its then value. This was a question of fact upon the evidence, which must here be deemed to have conclusively been determined in the court below. If such knowledge was essential to the liability of the defendants, it is not clear that the recovery against the defendant Soutter can be supported in view of the exception taken to the denial of the motion to dismiss the complaint as to him. He never had seen the property at the time the certificate was made; had taken no part in the matter until he became director, and, to make him such, he was presented by Attrill with fifty shares of the stock; and, although he knew the object of the corporation, was fully advised of the contemplated enterprise, and understood what the consideration of

the conveyance to the company was, and how it was paid, those facts were insufficient to charge him with actual knowledge that the consideration was in excess of the value of the property. The information which it appears he had was consistent with good faith so far it was dependent upon want of actual knowledge on his part in that respect. (*Schenck* v. *Andrews*, 57 N. Y. 132; *Boynton* v. *Andrews*, 63 id. 93; *Douglass* v. *Ireland*, 73 id. 100; *Pier* v. *Hanmore*, 86 id. 95; *Bonnell* v. *Griswold*, 89 id. 122.) The cases just cited had reference to certain provisions of a prior statute relating to corporations for manufacturing, etc., purposes, in which it was provided that "If any certificate or report made, or public notice given, by the officers of any such company, * * * shall be false in any material representation, all the officers who shall have signed the same, knowing it to be false, shall be jointly and severally liable for all the debts of the company contracted while they are stockholders or officers thereof." (Laws 1848, chap. 40, § 15.) It is seen that such provision is substantially like that first above mentioned, except the effect given to it by the use of the words "knowing it to be false," which were omitted in the latter. The construction of section 21 of the act of 1875, in view of the omission of those words, is not since the case of *Torbett* v. *Eaton* (113 N. Y. 623; 49 Hun, 209) an open question. That action was brought by a creditor of the American Opera Company (limited), incorporated under the act of 1875, against a director charging that an annual report of the company subscribed by the defendant was false. The question arose upon demurrer to the answer of the defendant alleging that he signed the report in good faith, having no knowledge or information that it was in any respect untrue, and that he did not have any reason to believe it to be untrue in any respect; and that he exercised proper care and dilligence before he signed the report to ascertain the facts set forth and to which it related. The question whether knowledge of the falsity of the report was essential to the liability of the defendant, was distinctly raised and the sole question presented. The demurrer was

sustained upon the ground that such knowledge was not necessary, but that the fact that the report was untrue in any material representation was sufficient to support the action to recover a debt due to the plaintiff from the company. And in affirming the judgment the Court of Appeals necessarily so held, although it does not appear that any written opinion was delivered by the court. The opinion of the Supreme Court was delivered by Mr. Justice DANIELS, considering distinctly and quite fully the question of the construction and effect of the provisions of the section upon which the right to maintain the present action depends. This view obviates the necessity for the consideration of some of the exceptions in the record, and has the effect, so far as that question is concerned, to dispense with any further consideration of the suggestion before expressed as to the defendant Soutter.

Prior to 1853. a manufacturing corporation was not permitted to issue stock in payment for property purchased. That was then provided for (Laws 1853, chap. 333) which increased the facilities of creating corporations for the purposes mentioned in the act of 1848 and the several amendatory and supplementary acts extending its provisions; and under that provision there were opportunities to do what was done in this case, to purchase property and put it into a corporation as capital, amounting to many times the sum paid for it, as a means of speculative enterprise, without personal liability for the debts of the company in the event it should fail of financial success, provided the projectors and promotors kept within the meaning of the law. That method of capitalizing a corporation, is evidently more likely to result in financial embarrassment, and to work more prejudicially to its creditors, than would that of issuing stock for cash only, and with that and such credit as the company may have, and be at liberty to use in that behalf, to purchase property for its purposes.

There is a question of public policy, worthy of some legislative consideration, bearing upon the subject, when provisions are made for the creation of corporations and defining their powers. It may have been in view of the construction given

to section 15 of the act of 1848, that the change from it, in the provision of section 21 of the act of 1875, was made. It is evident that the word "false" in the former statute was not treated as importing knowledge or bad faith. And, recognizing that fact, it is urged by the learned counsel for the defendants that the assumption should not be indulged that the same meaning which that word had in that statute was intended to be applied to it in the act of 1875, because it might in its consequences be seriouly prejudicial to persons acting innocently and in good faith. But it may be observed that while liability within the provision in question is in some sense penal in character, it may have been intended for the protection of the creditors of corporations, created pursuant to that statute, so far as it might be done against the delusive appearances of financial condition, as represented by the official reports and certificates of those charged with the means of knowledge to make and the duty of making them, and placing them on file, where they may be subjected to inspection by the public. For that purpose, at least, the effect may be deemed salutary of a legislative provision, which would be productive of appreciation of duty, and the faithful discharge of it by those representing business corporations in the exercise of their franchises. And it is not seen that the prudence, requisite to protection against undue personal liability, may not be exercised under the statute without serious prejudice to legitimate corporate enterprise.

The defendants offered evidence as to value of this, based upon comparison with other seaside property at different places, and exception was taken to its exclusion. It may be that such evidence would have furnished some guide for estimate of the value of the property, but might not. Such evidence would present collateral issues, which might, and very likely would, involve a variety of considerations having relation to similarity or difference, and to advantages and disadvantages of the different properties in numerous respects as compared with that in question. It is quite well settled that evidence of that character is not admissible upon the

question of value of property in controversy. (*Gouge* v. *Roberts*, 53 N. Y. 619.) And the same may be said of the opinions of witnesses, which the defendants sought to introduce, founded solely upon their knowledge of transactions in other property along the coast and not in the vicinity of that in question. It is contended that such a rule ought not to be applied to this case because the property was without a market value, and its value was dependent upon its advantages and capacity for development and improvement as a place of seaside summer resort, on the plans adopted at other places, such as Long Branch, Elberon, Coney Island and Wave Crest, to which reference would likely be had by the parties who had in view like improvement upon the premises in question, and, therefore, the jury should be advised by evidence of the information which a purchaser would have on the subject, and of the facts which would or might influence him and his opinion of the value of the property for such purposes. The adoption of such a rule to the extent claimed, would open a wide field of speculative inquiry. If, however, it could successfully be affirmed that the influence, which would lead one man to an opinion, would be the common judgment of all prudent business men, there would be much force in the suggestion that the jury should by the evidence be furnished the opportunity to act upon such information, but since the reasons and influences which induce speculative enterprises, may be somewhat peculiar to those who engage in them, and the views of comparative advantages widely differ in respect to feasibility and results, it seems to be less conservative and reliable, as a rule of evidence, to attempt to base values merely upon comparison with those of other property at other places, resulting from its use, profitable or unprofitable, or upon opinions which witnesses may have formed solely on the relation in value arising from such use, and which they may assume it has to that which is the subject of controversy. The results, to follow, of development and use of the latter for similar purposes must be somewhat experimental and speculative. The conclusion is that there was no error in the rejection of the evidence. The

books of the company were competent as evidence so far as related to any entries legitimately contained in them and so far as they were relevant to the issues on trial. (*Allen* v. *Coit*, 6 Hill, 318; *First National Bank* v. *Tisdale*, 84 N. Y. 655; *Blake* v. *Griswold*, 103 id. 429.) It is not apparent that the liabilities of the company in April, June, and the first of July, 1880, had any bearing upon the question of value of the property. But upon the further issue acquiescently tried, whether the defendants were chargeable with *scienter* and acted in good faith in respect to value in making the representation contained in the certificate, assuming that the value was less than the amount of the stock, the evidence may have had some bearing, although slight. The entries may also have been competent as bearing upon the issue whether the debt in question was that of the company inasmuch as that, in one view taken, may have been dependent upon the adoption by the company of the course of business as conducted by Smith, its manager. Further entries in the books of the company were also introduced in relation to the fund produced by the loan made of the plaintiff, which constituted the debt to recover which this action was brought. This evidence was competent, not perhaps to establish the fact that the money was borrowed of him, that was proved by other evidence, but to show that the company had the benefit of it, as bearing upon the disputed question whether it was the debt of the company. Smith, the manage of the company, to which position he was duly appointed, made the loan of $100,000, and gave the plaintiff his note for the amount, payable to its order, which note was indorsed by Smith, as such manager, in the name of the company, and as collateral security for its payment, he delivered, with the note, mortgage bonds of the corporation. It was contended that he had no authority to make the loan for the company, or to indorse for it the note. There was no error in the reception of the evidence furnished by the books. It appeared by evidence taken subject to exception, that the property, with improvements, was afterwards sold at judicial sale for $175,000. This evidence was admissible on the question of value, although it may

have been entitled to but little force in that direction. (*Campbell* v. *Woodworth*, 20 N. Y. 499; *Hoffman* v. *Conner*, 76 N. Y. 121.)

It is deemed unnecessary to refer specifically to the evidence on the subject, but it was sufficient to permit the court to submit, as it did, to the jury the question whether the debt, to recover which this action was brought, was that of the company. In response to the request to charge, that before a verdict could be found for the plaintiff, the jury must be satisfied by affirmative proof that Smith was authorized to indorse the name of the company on the note, by prior resolution of the executive committee or by the board of directors or by ratification, by resolution, or some equivalent act of such committee or board, the court charged substantially that the jury, to reach such result, must find either prior authority or subsequent ratification, and that it could be evidenced by general course of business as well as by resolution. There was no error in this charge, and the exception to the refusal to charge as requested was not well taken.

The defendants' counsel requested the court to charge "that by the words 'at its fair value' in section 14 of the act, is meant the fair value of such property for the uses and purposes of the company in the conduct of its legitimate business and not the actual market value or the actual intrinsic value thereof at the time it is acquired by the company," and complain of the modification made by the trial justice in response to the request, that he knew of no value other than instrinsic or market value, and then proceeded to charge the jury to the effect that they had the right to consider, in determining the fair value of the property, its value for the use to which it was to be put, and the adaptability of it to any specific purpose, that they are constituent elements of instrinsic value, and although the value to be ascertained by the jury was that, at the time of the sale and conveyance to the company, any peculiar advantages, known or unknown, and even if known would make it advantageous to a few only, properly enter into consideration and go to make up the value as of that time.

There was no error in the modification or in the refusal to charge as requested. The fair value contemplated by the statute is that which the property had at the time of the sale and which constituted the consideration upon which the subscription to the capital stock of the company was satisfied. Then was the time the estimate of the value must, for that purpose, be deemed to have been made. It could not be dependent upon subsequent success or failure of the investment further than such result may have been legitimately within evidential contemplation at the time of the sale in view of the uses, for which it may have had available advantages within itself. This was fairly submitted by the court to the consideration of the jury.

The jury were properly not required to give the defendants the benefit of all reasonable doubts, in the sense applicable to criminal cases, but were permitted to govern their action in reaching a result by a fair preponderance of evidence. (*People* v. *Briggs*, 114 N. Y. 56.)

Nor is any force, applicable to this case, seen in the contention of the learned counsel for the defendants, that the statute giving the remedy for the relief sought is in violation of the Constitution. The corporate franchise is taken subject to the terms and conditions of the statute, and those who take the privileges to be derived from a corporation and undertake its management do so voluntarily. They assume the duties incident to it and the statutory responsibilities which result from failure to observe and perform those duties.

No other question seems to require the expression of consideration.

The judgment should be affirmed.

All concur, except POTTER, J., dissenting.

Judgment affirmed.