(173 App. Div. 840)

EMMET, State Superintendent of Insurance, v. NORTHERN BANK OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    July 10, 1916.)

CORPORATIONS ☞414(1)—CORPORATE POWERS—REPRESENTATIONS BY OFFICER—NEGOTIABLE INSTRUMENTS.

No recovery can be had upon a note of a financial corporation, signed by its vice president and secretary, in the absence of proof of their authority by usage or charter, or resolution or by-laws of directors, or proof that the corporation received the benefit of the proceeds.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1640; Dec. Dig. ☞414(1).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, New York County.

Action by William T. Emmet, as State Superintendent of Insurance, against the Northern Bank of New York. From a judgment for defendant on its counterclaim, and dismissing the complaint, plaintiff appeals. Reversed, and judgment directed for plaintiff.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, SMITH, and PAGE, JJ.

George M. Mackellar, of New York City, for appellant.
George W. Morgan, of New York City, for respondent.

SMITH, J. Upon July 8, 1910, there was presented to the Northern Bank of the City of New York a note purporting to be the note of the Title & Guarantee Company of Rochester for the sum of $50,-000, payable upon demand. The note was signed by Anthony Stumpf, vice president, and W. B. Lomax, secretary, and was made payable at the Riverside Branch of the Northern Bank of New York, with interest. Upon receipt of that note at its main office the Northern Bank gave a cashier's check, payable to the Title & Guarantee Company of Rochester, which was thereafter indorsed by the said Stumpf and said Lomax in behalf of the Guarantee Company. After indorsement the check was transferred to the Bankers' Realty Company, which deposited it in the Northern Bank to its own credit; the said Bankers' Realty Company having at that time an overdraft in said bank of upwards of $100,000. The note was not paid, and the superintendent of insurance of the state of New York took over the property of the Title & Guarantee Company. This action was then brought to procure the cancellation of that note as made without authority. The Northern Bank counterclaimed upon the note itself. The trial judge dismissed the complaint, and gave judgment for the defendant upon the counterclaim.

In Life & Fire Insurance Co. v. Mechanic's Fire Insurance Company of New York, reported in 7 Wend. 31, it is held that a president of an incorporated company cannot borrow money in the name of the company and pledge its responsibility, unless authorized by the charter of the company, or by a resolution or by-law of the directors. In that case an action was brought to recover moneys loaned by the president of the defendant corporation, and relief was denied because of lack of proof that the president was authorized to borrow the moneys. Sutherland, J., in writing for the court, said:

"It was incumbent upon the plaintiffs to give some evidence of the authority of Mr. Franklin to borrow money for the defendants. Such authority is not implied from his appointment as president; as such, he is merely the presiding officer of the board of directors, chosen by them from their own body, and has no more authority from the charter to bind the company by any of his acts than any other director has; his powers are such only as the board of directors, either by their by-laws or otherwise, think proper to confer upon him. No evidence of any such delegation of power was given. It does not appear that borrowing money in this manner was one of the ordinary powers exercised by the president, or that the company ever knew of or ratified any of these acts, or similar transactions in relation to other companies or individuals. To hold the defendants responsible upon this evidence would be to establish the principle that the presidents of all the incorporated companies in the state had authority, by virtue of their offices merely, without reference to the powers actually conferred upon them, to pledge the responsibility of the

companies to any extent—a doctrine at war with fundamental principles, and which would be utterly subversive of the rights of all the stockholders in these public associations."

This same rule is held in First National Bank of Lyons v. Ocean National Bank, 60 N. Y. 278, 19 Am. Rep. 181; Western Railroad Co. v. Bayne, 11 Hun, 166, affirmed 75 N. Y. 1; Marine Bank of the City of New York v. Clements, 3 Bosw. 600.

There is no claim that the Title Company received the benefit of any of these moneys. The making of the note by the vice president and treasurer was dictated by Robin, who controlled their actions, for purposes other than the purposes of the Title Company. The manipulations of Robin of the properties of the several companies which he controlled are too well known to require repetition here, and are set forth in different opinions appearing in the books wherein these transactions have been questioned.

In manipulating the affairs of this Title Company papers were procured to be signed by Stumpf as vice president while the president was at all times accessible, and under the by-laws of this company the president himself was only authorized to execute papers directed by the board of directors of the company, which authority was not here given. It follows, therefore, that for failure to prove the authority for the execution of this note, and for failure to prove that the Title Company received the benefit of the proceeds thereof, the recovery upon the note must be reversed, and upon actual proof that the note was unauthorized, and issued for purposes foreign to the purposes of the corporation itself, the plaintiff's prayer for judgment should have been granted, and the note canceled.

The learned trial judge denied the plaintiff the relief asked, and directed judgment against the plaintiff upon the note in question, upon the holding that the Ætna Indemnity Company, another corporation, owning all the stock of the Title & Guarantee Company, had fraudulently used the note for the purpose of covering up a colorable sale of bonds to the Bankers' Realty Company, and had itself received the benefit of its proceeds. The holding, however, that this sale was colorable only, and not actual, is not supported by the evidence. The insurance commissioner of Connecticut required the Ætna Indemnity Company, a Connecticut corporation, to dispose of the securities, which were sold to the Bankers' Realty Company, and to pay for which this overdraft of the Bankers' Realty Company in the Northern Bank of $106,000 was incurred. There was never any attempt to reinvest the Ætna Indemnity Company with the title to these bonds, and while most of the acts of Robin and Morris, committed through dummies as officers of these various companies, were illegal, and an infringement of the rights of the various stockholders, the sale of the bonds by the Ætna Indemnity Company to the Bankers' Realty Company appears to have been absolute, and the finding of the trial court that it was colorable merely must be reversed, as unsupported by evidence.

The judgment must therefore be reversed, with costs, on law and fact, and judgment directed for the plaintiff for the relief demanded in the complaint, with costs.

The findings of fact of which this court disapproves are findings 27 and 44, and this court finds that the note in question was made without authority of the Title & Guarantee Company of Rochester, and that the Title & Guarantee Company received no benefit from the proceeds thereof. All concur.