[Civil No. 3011. Filed June 16, 1931.]

[300 Pac. 195.]

ARIZONA SOUTHWEST BANK, a Corporation, Appellant, v. CHARLES H. ODAM, Appellee.

Messrs. Myrland & Samuelson, for Appellant.

Messrs. Kingan & Darnell and Mr. Frederic G. Nave, for Appellee.

LOCKWOOD, J.—Arizona Southwest Bank, a corporation, hereinafter called appellant, brought suit

against Charles H. Odam, hereinafter called appellee, on a promissory note executed by the latter in favor of the Arizona Military Institute, a corporation, hereinafter called the Institute, which note appellant claimed had been duly assigned to it by the Institute. Appellee answered, admitting the execution of the note and its possession by appellant, but denied that the latter was the legal holder thereof, and alleged that the purported transfer to appellant was made without authority from the Institute. The case was heard before the court sitting without a jury, and findings of fact were made. Upon these findings the court rendered judgment in favor of appellee, and from said judgment this appeal is taken. The following facts are undisputed and the questions raised on the appeal are, with one exception, purely legal:

In 1929 the Arizona Military Institute was organized as a nonprofit corporation under the laws of the state of Arizona, with its principal place of business in Phoenix. Its purpose was principally to conduct a military institution to be used as an academy or college of learning. The Institute endeavored to finance itself principally by the sale of certain preferred stock, and a considerable sum was subscribed by various parties, part being paid in cash and part by notes, among which latter was the one in question in this case, which was executed by appellee on July 19, 1929.

On July 3d appellant received a letter which reads as follows:

"Headquarters Arizona Military Institute
"Tucson, Arizona, July 3rd, 1929.
"Arizona Southwest Bank,
"Tucson, Arizona.
"Gentlemen:
"At the last meeting of the Board of Trustees of the Arizona Military Institute the Arizona Southwest Bank was appointed a depository for the funds of the Institute.

"According to our By-Laws checks may be signed by the President, Vice-President, Secretary and Treasurer, and countersigned by any of the above (except the one signing), the Quartermaster or the Auditor.

"Mr. R. Ward Russell has been appointed Acting Quartermaster pending the arrival of Major D. D. Douglas, Quartermaster.

"Very truly yours,
"ARIZONA MILITARY INSTITUTE,
"[Signed] COLES LANGDON,
"Vice-President & Secretary.
"[Corporate seal attached.]"

In accordance with such letter the bank opened an account in the name of the Institute, and various deposits were made therein from time to time, and checks were drawn thereon, signed in accordance with the letter above quoted.

On August 21st Coles Langdon and D. D. Douglas, who at that time claimed to be respectively the vice-president and treasurer of the Institute, sold the note to appellant, indorsing it: "Arizona Military Institute, by Coles Langdon, Vice-President, D. D. Douglas, Treasurer." The money received from the bank for the note was deposited in this account, and on August 28, 1929, four days after it had been so deposited, there remained in the account $186.53, the rest of the proceeds of the note having been paid to Langdon and to the George B. Eckles Building Company.

There are three propositions of law upon which appellant relies in this appeal, and we state them as follows: (1) When a plaintiff in a suit on a promissory note is in possession thereof, the maker of the note in the absence of *mala fides* may not attack plaintiff's title by showing that the title is in some other party, so long as the maker is protected against the claim of such party by the payment of a judgment which may be rendered against him, unless he has a defense or set-off which would be good against the

payee; (2) the indorsement appearing on the note in question was a legal, binding, and effective indorsement, transferring all right, title and interest therein of the Institute to the bank; and (3) even if such were not the case, the Institute, having received the funds from appellant for the note, and having used them for corporate purposes, cannot question the authority of the officers negotiating the note.

Considering the first proposition, while there are some cases which take the view that the production by the plaintiff of a note purporting to be indorsed by the payee is *prima facie* evidence of title in a plaintiff, yet the great weight of authority is to the effect that when the indorsement and delivery by the payee as well as the alleged ownership of the plaintiff are denied by the answer, the burden is upon the plaintiff to prove the genuineness of the indorsement. *Capitol Hill State Bank* v. *Rawlins Nat. Bank,* 24 Wyo. 423, 11 A. L. R. 937, and note, 160 Pac. 1171. In the case at bar these questions were specifically raised by the answer, and we think it was incumbent upon appellant to prove the genuineness of the indorsement or that the Institute was estopped from denying it.

The next question is as to the indorsement. The trial court found that Langdon and Douglas were never legally chosen as vice-president and treasurer, respectively, of the Institute. We think, however, in passing on this question we may assume for the sake of argument that they were such officers. Had they authority, express or implied, to negotiate the note in question? It cannot be contended the by-laws give it, for the pretended by-laws were never submitted to or adopted by the stockholders of the corporation, the board of trustees alone attempting to adopt them as well as all amendments thereto. In the absence of statute it is almost universally held that such action must be taken by the stockholders, and that the board of directors or trustees cannot adopt by-laws unless

they are specially authorized to do so, either by the statute, the articles of incorporation, or by vote of the stockholders. *North Milwaukee Town Site Co. No. 2* v. *Bishop,* 103 Wis. 492, 45 L. R. A. 174, 79 N. W. 785; *Brinkerhoff-Farris etc. Co.* v. *Home Lumber Co.,* 118 Mo. 447, 24 S. W. 129; *Morton Gravel Road Co.* v. *Wysong,* 51 Ind. 4; *People* v. *Ittner,* 165 Ill. App. 360.

Nor does the general provision placing the management of the corporation in the hands of the trustees give such authority. *North Milwaukee Town Site Co. No. 2* v. *Bishop, supra.* Nowhere in the minutes is there any express authority granted to the vice-president or the treasurer, either to open a bank account or to sell or discount the negotiable notes belonging to the Institute.

But, it is urged, it is within the implied powers of these officers to perform such acts. As a general rule an officer or agent of a corporation cannot indorse a negotiable instrument in the name of the corporation unless he is authorized thereto by the corporate charter, or a resolution of the board of directors. *Emmett* v. *Northern Bank of New York,* 173 App. Div. 840, 160 N. Y. Supp. 183.

It is not necessary, however, that this authority be conferred in a formal manner, and it may arise by implication, through the officer being held out by custom or a course of dealing, or otherwise as having such authority. *German-American Indem. Co.* v. *State Merc. Bank,* 26 Colo. App. 242, 142 Pac. 189; *Huntington* v. *Attrill,* 118 N. Y. 365, 23 N. E. 544.

It appears from the record in this case that at all times from the organization of the Institute up to the date of its last meeting, Coles Langdon was in absolute control of it and its policies. He originally owned 32 out of 36 shares of the outstanding voting stock of the Institute; when that stock was canceled, there was issued to him 4,660 shares out of 5,000 of

the voting stock then authorized. At a later time he sold back to the Institute 2,000 shares, but, so far as the record shows, at all times was the owner of an absolute majority of the outstanding voting stock. He was appointed as Commandant of the Institute, given a salary of $4,800 per year, effective from the organization of the corporation, and, generally speaking, the board of trustees apparently was, up to the meeting of August 28th, merely a rubber stamp in his hands.

Under the circumstances shown by the record, we are of the opinion that he was held out by the trustees as authorized to act for the Institute in all its financial affairs, and that it is estopped as against appellant herein from asserting that Langdon and Douglas did not have authority to negotiate and indorse the note in question. If the Institute cannot question the indorsement, neither can appellee. Such being the case, the judgment of the superior court of Pima county is reversed and the case remanded, with instructions to enter judgment on said note in favor of appellant.

McALISTER, C. J., and ROSS, J., concur.