The **MUTUAL LIFE INSURANCE COMPANY OF NEW YORK**, a corporation, Defendant-Appellant,

v.

Robert G. **MOOREMAN**, Trustee of the Estate of Laing-Garrett Construction Specialties, Inc., Plaintiff-Appellee.

No. 20225.

United States Court of Appeals
Ninth Circuit.

Sept. 19, 1966.

Rehearing Denied Nov. 10, 1966.

---

Ralph J. Lester, Phoenix, Ariz., Arthur O. Kaiser, New York City, Evans, Kitchel & Jenckes, Phoenix, Ariz., Richard I. Fricke, New York City, for appellant.

Beverly J. McConnell, Wilson & McConnell, Phoenix, Ariz., for appellee.

Before HAMLIN, MERRILL and DUNIWAY, Circuit Judges.

MERRILL, Circuit Judge.

The question on this appeal is whether a policy of life insurance issued by

appellant had lapsed for nonpayment of a premium prior to the death of the insured.[1] The District Court ruled that it had not; that while the crucial premium had not been paid by the owner, appellant at that time was indebted to the owner in an amount in excess of the premium and that payment must therefore be presumed to have been made by operation of law.

Appellee is trustee in bankruptcy of the Arizona corporation which was the owner and beneficiary of the policy in question. The policy insured the life of Charles W. Laing, president of the corporation. Laing died April 22, 1961. This suit was brought by appellee to recover the death benefits provided by the policy.

The alleged lapse occurred as follows: The quarterly premium due October 27, 1960, was not paid by the beneficiary corporation but was paid by application of an automatic premium loan provision contained in the policy. The premium due January 27, 1961, was not paid. The policy prohibited the payment of two successive premiums through the application of the automatic premium loan provision. On March 22, 1961, appellant notified the beneficiary corporation that the policy had lapsed through nonpayment and the expiration of a 31 day grace period, but that the policy might be reinstated if the company chose to apply for reinstatement and pay the back premiums. By the time of Laing's death, a month later, the beneficiary had not applied for reinstatement.

The indebtedness of appellant to the beneficiary corporation which the District Court found to exist arose in this manner: On August 30, 1960, the beneficiary corporation applied to appellant for, and was granted, a loan on its policy in the sum of $2,491.46. The proceeds were applied as follows: $364.80 was applied as payment of the premium on the corporate policy due July 27, 1960;

a check in the sum of $1,668.11 was issued to the beneficiary corporation and subsequently deposited by it in its bank account; the sum of $458.55 was, on the oral instructions of Laing, applied by appellant as payment of a premium due on a different policy insuring Laing's life on which Mrs. Laing was the beneficiary and in which the corporation had no interest. This last payment of $458.55 constitutes the alleged debt in issue. The District Court found that Laing was without corporate authority, actual or apparent, to appropriate corporate funds in this manner. The sum of $458.55 having never been paid to the borrower remained due and owing.

Appellant here contends that the record establishes as matter of law that Laing had both apparent and implied actual authority to use corporate funds in this manner. We agree.

The corporate stock was owned in equal shares by Laing and one Hilkert, who served nominally as secretary-treasurer. The board of directors consisted of Laing and Hilkert,[2] but the actual operation of the corporation was most informal. No regular meetings were held or minute books kept; Laing, who was experienced in the construction field in which the corporation operated, was the general manager and conducted the business affairs. Hilkert, although on salary, performed none of the normal duties of his offices. He did not participate in the day-to-day operations or in the keeping of the books or records and paid almost no attention to the corporate business, but confined himself to his practice of law and accounting in a separate office. He testified: "I only devoted part time when I was called upon for special things * * * whenever there was anything out of the ordinary that required concurrence. Mr. Laing usually came to my office and discussed the matter."

Both Hilkert and Laing maintained open accounts with the corporation and

---

1. Jurisdiction is grounded on the Bankruptcy Act, 30 Stat. 552 (1898), as amended, 11 U.S.C. § 46 (1964).

2. Arizona does not have the common requirement for at least three directors.

used corporate credit for certain personal purposes. Hilkert testified that these were confined to "accommodation purchases" of merchandise on which the corporation received a discount. The corporation was billed for such purchases, paid for them with corporate funds, and the amounts so paid were charged on the open account against the purchaser. In Hilkert's case such charges were against his unpaid salary, and at the time of bankruptcy the corporation was indebted to him in the sum of $80,000, largely for salary. (As such he is one of the principal creditors of the bankrupt estate.) Laing's case was quite different. His account apparently reflected not only "accommodation purchases," but also cash withdrawals and general personal uses of various sorts, including an airline trip for himself and his wife. At the time of his death he had overdrawn his salary in the amount of approximately $22,000. (Hilkert testified that Laing's book debt was somehow balanced by another account in the name of Mrs. Laing, containing personal funds of both the Laings plus corporate funds.)

Hilkert was asked whether, as far as he was concerned, there was "anything for or against using the credit of the corporation or the cash of the corporation for private purposes." He answered: "Except that if there was anything that I felt was overdoing it, I objected to it * * *. In other words, there was always, we will say, a limit in the tolerance between Mr. Laing and I" in such use of corporate credit.

Thus the record establishes an understanding between the stockholders of the corporation that, subject to reimbursement to the corporation, Laing could feel free to use corporate credit or cash for personal needs, subject only to Hilkert's objection if Laing were felt to be "overdoing it."

Laing's personal insurance policy was taken out in March, 1959. Two weeks later Laing applied to the insurance com-

pany for its "MONY-Matic monthly premium check plan," an arrangement whereby the insurance company could draw directly on the bank account of the premium payer for premiums due. Here the application was to draw upon the corporate bank account in the amount of $149.03 each month. It was signed "C. W. Laing, President," and "R. C. Stremble," a corporate employee authorized to sign checks.

Thereafter, MONY-Matic payments were drawn directly from the corporate account through March, 1960, and the next two premiums were paid by corporate check. That these payments were made was sufficiently demonstrated by bank records introduced in evidence, plus charges on the corporation's books in precisely the amount of the premiums. That they were made would also be apparent to anyone familiar with the business, as the canceled drafts were returned to the corporation each month with other canceled checks, and they bore the Mutual plan's identification on their face. No objection was ever made by Hilkert.

■ In our judgment, under the arrangement between the stockholders, Laing reasonably could feel authorized to charge his open account with insurance premiums until objection was voiced by Hilkert. We conclude that he was impliedly authorized to act in that manner. Restatement (Second), Agency § 7 comment c; § 43 (1958).[3]

At the time of the transaction here in question the insurance company was aware that for over a year the corporation had been paying premiums on Laing's personal policy, that such payment plan appeared to have corporate authority at the outset, and that no corporate protest had ever been made. The application for the loan was itself signed by Hilkert, which gave added assurance that the corporation was aware of dealings with the insurer. The use made of the proceeds of the loan was in no significant respect different from the

**3.** See also Sweet v. Lang, 14 F.2d 762 (8th Cir. 1926); Reif v. Equitable Life Assur. Soc., 268 N.Y. 269, 197 N.E. 278, 100 A.L.R. 55 (1935); Gonzalez & Co., Brokers, Inc. v. Thomas, 42 Ariz. 308, 25 P.2d 552 (1933).

**690**

MONY-Matic transactions; the premium simply was paid directly out of corporate cash instead of through the corporate bank account.

██ Hilkert testified (and the District Court found) that he had no knowledge of the MONY-Matic arrangement or payments. In our view he should be charged with such knowledge. Had he been performing the duties for which he now claims compensation he certainly would have known. But more, knowledge was not essential to authority. Under his arrangement with Laing, if Laing's exercise of his general authority was to be kept within bounds, it was Hilkert's obligation to keep himself informed as to the extent of Laing's borrowings.

██ Appellee contends that the arrangement between Hilkert and Laing must be disregarded as not the formal act of the corporation. This contention we reject. The facts are clear that both stockholders joined in dispensing with any need for formal corporate action. Hilkert's conduct invited Laing to hold himself out as possessing full corporate authority to engage in the questioned transaction. That conduct in a corporation as closely held and informally operated as this one is chargeable to the corporation, at least where no insolvency is proved to result from the transaction.[4]

██ We conclude that Laing was invested by the corporation with apparent authority to make personal use of corporate funds on the occasions in question, on which apparent authority the insurance company justifiably relied. Restatement (Second), Agency § 49 comments b, c; § 43 (1958).[5]

It follows that no debt was owed to the corporation by the insurance company at the time the corporate policy lapsed.

Judgment reversed.

---

4. Sweet v. Lang, supra, note 3; Little v. Garabrant, 90 Hun 404, 35 N.Y.S. 689 (Sup.Ct.1895); Bashford-Burmister Co. v. Hammons, 36 Ariz. 173, 283 P. 926 (1930).

---

5. See also Hall v. Crawford & Delphenis, 11 S.W.2d 804 (Tex.Civ.App.1928); Glens Falls Indemnity Co. v. Palmetto Bank, 23 F.Supp. 844 (W.D.S.C.1938); Arizona Southwest Bank v. Odam, 38 Ariz. 394, 300 P. 195 (1931).